### HARPER v. ENDERT et al.

(Circuit Court, N. D. California. August 20, 1900.)

#### No. 12,852.

POST OFFICE—OBSTRUCTING CARRIAGE OF MAILS—EXACTING TOLL FROM MAIL CARRIER.

To constitute a knowing and willful obstruction of the passage of the mails, or of a vehicle, horse, or carrier carrying the same, which is prohibited by Rev. St. § 3995, the act must be in itself unlawful. The refusal of persons operating a toll road, under a franchise which does not exempt mail carriers from payment of toll thereon, to permit a mail carrier to pass their gates without payment of toll, is not unlawful, or within such section, so as to sustain the jurisdiction of a federal court over a suit by the mail contractor for an injunction and damages, on the ground that it involves a federal question.

Action in equity to enjoin defendants from collecting tolls from complainant while conveying the United States mail over a certain toll road.

Frank McGowan and L. H. Cooper, for complainant.
L. Buck, for defendants.

MORROW, Circuit Judge. This is an action in equity. The bill alleges that complainant is a citizen and resident of the state of Oregon, and the defendants citizens and residents of this district; that the defendants are executors of the will of one Horace Gasquet, deceased, whose sole devisee and legatee is one Elie Gasquet, a citizen of France; that complainant has had a subcontract since July 1, 1898, for carrying the United States mail from Grant's Pass, in Oregon, to Crescent

City, Cal., and back, seven times each week, upon a schedule satisfactory to the postmaster general, for the sum of $4,800 per year, for the violation of which contract certain penalties are imposed. The bill also alleges that in 1881 the supervisors of Del Norte county, Cal., gave Horace Gasquet a franchise to collect tolls over a certain road, named "Gasquet's Road"; that this is the only route which complainant can use in carrying out the subcontract; that there are two toll gates on said road, operated by defendants as a part of the road, and defendants securely fasten these gates to prevent complainant from going through, and have employés and servants watching the gates for that purpose, one of whom is John Endert, postmaster at Gasquet, Cal., and threaten to use violence to complainant to prevent him carrying the mail through these gates without payment of the toll that they claim he is bound to pay under the terms of the ordinance of the board of supervisors of Del Norte county, Cal., conferring the franchise upon Horace Gasquet; that since January 18, 1899, defendants have refused to permit complainant to carry the United States mail through said gates, and have delayed the transmission of the mail, and aver that they will continue so to prevent and delay complainant unless he pay the defendants $60 per month as toll; that complainant has been compelled to pay large sums of money to prevent defendants from carrying into effect their threats to stop the United States mail; that during his lifetime Horace Gasquet, while claiming to act under the ordinance aforesaid, waived the right to collect toll from all persons carrying United States mail; that the toll is illegally demanded and exacted by defendants; that since February 25, 1899, complainant has paid defendants $1,076 for traveling over said road while carrying the United States mail; that complainant has large sums of money invested in material necessary to carry out said subcontract, and that he is prevented from carrying out his contract by reason of the acts of defendants, and if he shall forfeit it he will sustain great loss and damage; that complainant has no plain, speedy, and adequate remedy at law; that this suit will prevent a multiplicity of suits; that defendants have exacted various sums of money from complainant, the amount of which he is unable to state, and he therefore asks for an accounting thereof. The bill further alleges conspiracy on the part of the defendants, with parties unknown, to injure and damage complainant in the matter of conveying the United States mail, and prays for an injunction requiring defendants to desist from collecting tolls from complainant while carrying United States mail over said road, and to give an account of all moneys received by them as such tolls, and, when that sum has been determined, that complainant have judgment therefor, and for further relief. The defendants have demurred to the bill on the grounds (1) that this court has no jurisdiction to grant the relief prayed for, or any relief; (2) that it appears from the bill that complainant is not entitled to the relief prayed for; (3) that the facts set out in the bill are not sufficient to entitle the complainant to relief; (4) that the bill shows that complainant has an adequate remedy at law.

The bill alleges the diverse citizenship of the parties, but fails to disclose that the jurisdictional amount of $2,000, exclusive of interest

and costs, is involved in the controversy. There is an allegation that since February 23, 1899, complainant has paid out $1,076 for tolls in traveling over the road in question while carrying the United States mail in pursuance of the subcontract alleged; and the payment of sums unknown in amount before that date is alleged, for which complainant asks that defendants give an accounting. The prayer of the bill is for the full sum, after the determination of these amounts, but it does not appear from the bill that the amount in controversy exceeds the sum of $2,000, exclusive of interest and costs. Complainant, however, claims a right of action against the defendants by virtue of the fact that he carries the United States mails, and is obstructed in so doing by the defendants, who will not allow the vehicles containing the mails to pass unless a toll is paid, and cites section 3995 of the Revised Statutes, as follows:

"Any person who shall knowingly and willfully obstruct or retard the passage of the mails or any carriage, horse, driver, or carrier carrying the same, shall for every such offense be punished by a fine of not more than one hundred dollars."

This section has been construed in the case of U. S. v. Kirby, 7 Wall. 483, 19 L. Ed. 278, where Justice Field said:

"The statute of congress, by its terms, applies only to persons who knowingly and willfully obstruct and retard the passage of the mail, or of its carrier; that is, those who know that the acts performed will have that effect, and performed them with the intention that such shall be their operation. * * * The statute has no reference to acts lawful in themselves, for the execution of which a temporary delay to the mails unavoidably follows."

In U. S. v. Kane (D. C.) 19 Fed. 43, it was said:

"In all such cases the question to be decided is whether the act causing the obstruction is in itself lawful. If it is, the obstruction necessarily caused thereby is not a crime. It can hardly be pretended upon the facts stated that these men who stopped this train had any legal right to travel thereon without payment of their fare or the consent of the conductor. No contract, understanding, or usage is alleged or shown, under or by virtue of which they could claim such a privilege with a shadow of right."

It appears from the bill herein that defendants are operating the road by virtue of a franchise granted in 1881 to Horace Gasquet by the board of supervisors of Del Norte county, empowering him to collect toll over the road in question. Section 2814 of the Political Code of California enumerates those exempt from the payment of tolls upon roads so operated, but among these the carriers of United States mail, as such, are not specifically mentioned, and consequently cannot claim any exemption upon the ground that they carry the mail. The question of the exemption of mail carriers from tolls arose at an early date in our history, in days when toll roads and turnpikes played a more important part in the relations of men than they now do. From the decisions upon the question of such exemption may be cited the case of Turnpike Co. v. Newland, 15 N. C. 463. The court there said:

"We find no act of congress excepting persons or carriages engaged in the business of the post office from the payment of tolls for passing ferries, bridges, or roads. As such tolls are granted as the price of construction and repairing those public accommodations, and are necessary for those purposes, and to no establishment are such facilities more indispensable than to the

103 F.—58

post office itself, it is probable that no such act has been or ever will be passed. Without a statute, no exemption can be inferred or allowed."

Again, in Dickey v. Turnpike-Road Co., 7 Dana, 113, it was said:

"Having been constructed by an association of individuals incorporated into a private body politic by an act of the Kentucky legislature which gave the corporation the right to charge toll according to a prescribed scale, in consideration of the appropriation of its own funds to the construction of the road for the public benefit, the turnpike road from Maysville to Lexington should be deemed private property, so far as the value of the franchise and the right to preserve it, as conferred by the charter in the nature of a contract, may be concerned; and therefore the public, whether it be Kentucky or the United States, can have no constitutional right to use the road without contributing to its reparation and preservation either a just compensation for the use, or the rate of tollage prescribed by the corporation under the sanction of its charter. By authorizing the company to exact a fixed compensation for the use of the road, the charter interfered with or impaired the power to carry the mail, wherever congress should elect to carry it, no more nor otherwise than it obstructed or impaired the right of every freeman to travel on any public way he might choose thus to use."

To the same effect is Proctor v. Crozier, 6 B. Mon. 268.

The acts of defendants were not unlawful in themselves. They acted by virtue of an ordinance expressly authorizing the charge of toll upon the road in question. Such obstruction as has occurred to the United States mail has done so incidentally, and the temporary delay caused to the mail has arisen naturally from the action of defendants in the exercise of their rights under said franchise. According to the allegations of the bill, there does not appear to be any cause of action under the section of the Revised Statutes cited by the complainant. Defendants' demurrer will therefore be sustained, and the bill dismissed.