The NEW YORK CITY JAYCEES, INC., Plaintiff-Appellee,

v.

The UNITED STATES JAYCEES, INC., and New York State Jaycees, Inc., Defendants-Appellants.

No. 343, Docket 74–1916.

United States Court of Appeals, Second Circuit.

Argued Jan. 20, 1975.

Decided March 7, 1975.

---

Robert J. Corber, Washington, D. C. (Steptoe & Johnson, Washington, D. C., on the brief, Ronald S. Cooper, Virginia M. Dondy, and Howard H. Stahl, Washington, D. C., of counsel), for defendants-appellants.

Sheila Maura Kahoe, New York City (Doman & Beggans, New York City, on the brief, Nicholas R. Doman and Ronald E. Pump, New York City, of counsel), for plaintiff-appellee.

Before WATERMAN, HAYS and MULLIGAN, Circuit Judges.

HAYS, Circuit Judge:

This action was brought by the New York City Jaycees ("Local") seeking injunctive relief to prevent revocation of its charter by the United States Jaycees ("National") and the New York State

Jaycees ("State").[1] The threat of charter revocation was made in response to the adoption by Local of a bylaw which admitted women to membership and was therefore inconsistent with the national bylaws restricting membership to males.[2] Local contended that revocation of its charter for noncompliance with National's policy of sex discrimination violated the Fifth and Fourteenth Amendments to the Constitution. The United States District Court for the Southern District of New York held that National, by virtue of its receipt of substantial government funding, its assumption of certain civic functions, and its tax exempt status, was subject to constitutional limitations prohibiting discrimination and granted plaintiff's motion for a preliminary injunction. We reverse.

The United States Jaycees is a national organization with headquarters in Tulsa, Oklahoma. Its purpose is to provide services to affiliated state organizations and local chapters.[3] Although originally organized for the sole purpose of promoting the business interests of its members, the Jaycees in recent years has shifted its program emphasis to providing community services. In support of its various civic projects, National receives federal funds which in fiscal year 1974 totalled $1,143,000, or 31.4% of the total Jaycee budget of $3,639,000.[4] Approximately half of the federal funds are received in the form of direct grants to National; the remaining federal funds are obtained through contracts between the federal government and an autonomously functioning affiliate, the United Jaycees Foundation. The federal funds are earmarked for specific civic projects and none are utilized for indirect administrative costs of the United States Jaycees. Both the United States Jaycees and the United Jaycees Foundation are tax exempt.[5]

Plaintiff concedes, as it must, that private action is immune from the restrictions of the Fifth and Fourteenth Amendments. See, e.g., Shelley v. Kraemer, 334 U.S. 1, 13, 68 S.Ct. 836, 92 L.Ed. 1161 (1948); The Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883). However, plaintiff claims that National's receipt of federal funds and tax exemptions, as well as its performance of civic functions, constitutes state action sufficient to subject it to scrutiny under the constitutional standard. We disagree.

The mere existence of government ties to a private organization is not sufficient to support a finding of state action. Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); Powe v. Miles, 407 F.2d 73 (2d Cir. 1968). As this court stated in *Powe*, "[t]he state must be involved not simply with some activity of the institution alleged to have inflicted injury upon a plaintiff but with the activity that caused the injury." 407 F.2d at 81. The Supreme Court has recently reaffirmed the principle that the determination of state action must be based on a particularized inquiry focusing on whether there is "a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated

---

1. Although State has been a named defendant from the commencement of this suit, it has taken no active role in any of the proceedings; the appellants will be referred to as National unless otherwise noted.

2. Before it amended its bylaws, Local was advised by the New York Attorney General that he would construe failure to do so as a violation of N.Y. Executive Law, McKinney's Consol.Laws, c. 18, § 296, subd. 6.

   After commencement of this action, National proceeded to revoke Local's charter but suspended the effectiveness of the revocation pending the determination of this action.

3. Currently there are 6,500 local chapters in the 50 states and the District of Columbia with approximately 325,000 members. In addition there are international affiliates in 82 countries.

4. The remaining $2,496,000 is derived from private sources.

5. The United States Jaycees is exempt pursuant to Section 501(c)(4) of the Internal Revenue Code of 1954. The Foundation is exempt from federal taxation by reason of Section 501(c)(3) of the Internal Revenue Code of 1954.

as that of the State itself." Jackson v. Metropolitan Edison Company, 419 U.S. 345, 349, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974). In this case the requisite connection between government and the offending activity has not been shown. Plaintiff does not charge discrimination in the operation of federally funded Jaycee programs; indeed such a claim could not be supported since not only do women participate both in the selection of local recipients for funding [6] and in the implementation of programs, but also the benefits of all federally funded Jaycee programs are distributed without regard to sex or other impermissibly discriminatory criteria.[7] Plaintiff's constitutional challenge is addressed solely to the internal membership, policies of the Jaycees; yet plaintiff has made no showing that the government is substantially, or even minimally, involved in the adoption or enforcement of these policies.[8]

This is not a case where "[t]he State has so far insinuated itself into a position of interdependence with [the private enterprise] that it must be recognized as a joint participant in the challenged activity . . . ." Burton v. Wilmington Parking Authority, 365 U.S. 715, 725, 81 S.Ct. 856, 862, 6 L.Ed.2d 45 (1961). In contrast, the government in this instance has limited itself to financial support of certain Jaycee programs, leaving the responsibility for program content, administration, management and performance in the hands of the grantees and contractors. The mere receipt of public funds does not convert the activities of a private organization into state activities. Wahba v. New York University, 492 F.2d 96 (2d Cir.), cert. denied, 419 U.S. 874, 95 S.Ct. 135, 42 L.Ed.2d 113 (Oct. 15, 1974); Grafton v. Brooklyn Law School, 478 F.2d 1137 (2d Cir. 1973); Powe v. Miles, 407 F.2d 73 (2d Cir. 1968); Grossner v. Trustees of Columbia University, 287 F.Supp. 535 (S.D.N.Y.1968). The lack of government involvement in discriminatory internal policies is particularly clear in a case such as this where the funds provided by federal contracts and grants do not sustain the general operations of the organization but rather are funnelled directly into discrete projects from which benefits are extended to the public without discrimination of any kind.

Similarly the grant of tax exemptions to the Jaycees does not constitute significant government involvement in the organization's exclusionary membership policy. As the Supreme Court has pointed out in the context of a First Amendment challenge to tax exemptions granted to religious organizations, a tax exemption does not constitute government "sponsorship" but instead "creates only a minimal and remote involvement." Walz v. Tax Commission, 397 U.S. 664, 675–76, 90 S.Ct. 1409, 1415, 25 L.Ed.2d 697 (1970). See also Marker v. Shultz, 158 U.S.App.D.C. 224, 485 F.2d 1003, 1005–07 (1973). No genuine nexus between the tax exemption and the complained of internal membership policies has been shown and in its absence, there is no constitutional wrong.

Plaintiff's reliance upon the so-called "public function" doctrine whereby private persons performing certain functions traditionally reserved to the state may become subject to constitutional restrictions is also misplaced. That doctrine is a severely limited one and "the fact that government has engaged in a particular activity does not necessarily mean that an individual en-

---

**6.** Selections for funding are made exclusively by the National Advisory Council of Together, Inc., a separately incorporated consulting organization. Four of the sixteen members of the Council are women.

**7.** Attorneys for the Office of Economic Opportunity investigating whether there was compliance with a provision of the largest federal grant expressly prohibiting sex dis-

crimination, similarly concluded that there was no sex discrimination in implementation of the grant.

**8.** Although four of the sixteen members of the National Advisory Council of the consulting organization, Together, Inc., are representatives of government agencies, the Council has no involvement in the internal membership policies of the Jaycees. See n.6 supra.

**860**

trepreneur or manager of the same kind of undertaking suffers the same constitutional inhibitions." Evans v. Newton, 382 U.S. 296, 300, 86 S.Ct. 486, 489, 15 L.Ed.2d 373 (1966). In fact this court has expressly recognized the "value of preserving a private sector free from the constitutional requirements applicable to government institutions." Wahba v. New York University, 492 F.2d 96, 102 (2d Cir. 1974). The public function theory applies only to those services which are "so clearly governmental in nature that the state cannot be permitted to escape responsibility by allowing them to be managed by a supposedly private agency." Powe v. Miles, 407 F.2d 73, 80 (2d Cir. 1968). Furthermore, the Supreme Court in its recent decision in Jackson v. Metropolitan Edison Company, supra, has suggested that the service involved must not only be one which is traditionally the exclusive prerogative of the state but that it must in addition be one which the state itself is under an affirmative duty to provide. Id., 419 U.S. at 351, 95 S.Ct. at 454. In Jackson, the Court specifically declined to find state action on a public function theory despite the fact that defendant was a utility company, provided an essential public service, enjoyed a state-protected partial monopoly and was subject to extensive regulation by the state. Certainly the public function argument is far less persuasive in the situation before us here. Moreover, as has been pointed out, plaintiff's claim does not relate in any way to the public services provided by the Jaycees, but only to the internal membership policies of the organization.

We therefore find ourselves in agreement with the Eighth and Tenth Circuits which, in reviewing suits brought by other complainants against the internal policies of the Jaycees, have similarly held that the requisite state action was lacking. Junior Chamber of Commerce of Kansas City, Missouri v. Missouri State Junior Chamber of Commerce, et al., 508 F.2d 1031 (8th Cir. 1975); Junior Chamber of Commerce of Rochester, Inc., et al. v. United States Jaycees, et al., 495 F.2d 883 (10th Cir.), cert. denied, 419 U.S. 1026, 95 S.Ct. 505, 42 L.Ed.2d 301 (1974). The Jaycees is a private organization acting in connection with its own enterprise, and the federal courts have no power to grant an injunction prohibiting its discriminatory membership policies.

The order of the district court is reversed.