Jessie STEARNS, Plaintiff,

v.

VETERANS OF FOREIGN WARS, a corporation chartered by Congress of the United States, Defendant.

Civ. A. No. 1415–72.

United States District Court, District of Columbia.

April 29, 1975.

Charles E. Robbins, Washington, D. C., for plaintiff.

Wilmer S. Schantz, Jr., McLean, Va., for defendant.

## MEMORANDUM OPINION

WADDY, District Judge.

In this action, plaintiff, a female veteran, seeks an order directing defendant Veterans of Foreign Wars of the United States (VFW), a corporation chartered by Act of Congress, 36 U.S.C. § 111 et seq., to reconsider her application for membership in said organization and enjoining defendant from barring her membership solely because she is a female. The bylaws of the VFW limits membership to men who meet the military service requirement, *i. e.*, those having military service outside the United States entitling them to a recognized campaign medal. This membership limitation, plaintiff asserts, violates the equal protection guarantee in the due process clause of the 5th Amendment of the Constitution of the United States. Plaintiff further seeks compensatory and exemplary damages, counsel fees, and costs.

On December 29, 1972, this Court denied plaintiff's motion for summary

judgment and, treating defendant's motion for judgment on the pleadings as one for summary judgment pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the Court having considered matters outside the pleadings, entered summary judgment for defendant. The opinion of this Court is reported at 353 F.Supp. 473.

Plaintiff appealed the judgment. On June 19, 1974, the Court of Appeals for the District of Columbia Circuit, in an opinion reported at 500 F.2d 788, having found that plaintiff had not been given the opportunity to "present all material made pertinent to such a motion by Rule 56" as required by Rule 12(c) of the Federal Rules of Civil Procedure when a motion for judgment on the pleadings is treated as a motion for summary judgment, remanded this case for "proceedings not inconsistent" with its opinion.

Plaintiff's original motion for summary judgment was premised on two grounds, *i. e.*, that (1) the membership clause of the corporate charter of the VFW limits membership in the organization to males, thereby unconstitutionally denying plaintiff equal protection, and (2) that even if the charter itself does not limit membership to males, federal chartering alone constitutes the kind of significant government involvement in private discriminations that is violative of the 5th Amendment. 353 F.Supp. at 475. Other than the fact that VFW had been granted a federal corporate charter, the record before the Court was bare of any further government involvement with the VFW. Finding subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, 353 F.Supp. at 475, this Court further found that there existed no issue of material fact, that the corporate charter did not .mandate discrimination on the basis of sex, 353 F.Supp. at 475–6, and that Congressional chartering alone, as a matter of law, does not constitute the kind of significant government involvement in private discriminations that is violative of the equal protection guarantee in the due process clause of the 5th

Amendment. 353 F.Supp at 476. Accordingly, the Court concluded that defendant was entitled to judgment as a matter of law and granted summary judgment for defendant.

On appeal, plaintiff argued, for the first time, that the involvement of the government with VFW went beyond mere chartering. Plaintiff pointed

"to the requirement of presentations to Congress of annual reports of proceedings [36 U.S.C. § 118] and of audits of finances [36 U.S.C. §§ 1102, 1103] ; to VFW's entitlement to loans or gifts of condemned or obsolete combat material [10 U.S.C. § 2572] ; to its special federal income tax status both in its exemption from a tax on income, 26 U.S.C. § 501(c)(4), and in the deductions from gross income accorded those who make contributions to the VFW, 26 U.S.C. § 170(c) ; and to the authorization, contained in 38 U.S.C. § 3402, of the Administrator of the Veterans Administration to recognize representatives of the VFW for the purpose of prosecuting claims under laws administered by the Veterans Administration, and the further authorization to furnish office space to VFW representatives." 500 F.2d at 790. (Footnotes in brackets).

The Court of Appeals, although not reaching the merits of this case, stated that while it was "inclined to agree" with the conclusion of this Court that "Congressional chartering alone does not constitute significant government involvement that triggers due process guarantees," 500 F.2d at 790, the aforementioned factors presented to the Court on appeal

"establish a color of government involvement with VFW that is not adequately described as 'Congressional chartering.' They invite further examination of the nexus between the VFW and the Government and consideration of how that nexus fits into the doctrine of 'state action.' " (Footnote omitted). 500 F.2d at 790.

Noting that

> "[t]he fact that [plaintiff] erred in seeking summary judgment on the theory that the Congressional chartering statutes were alone sufficient to trigger due process guarantees did not disable [plaintiff] from bringing forth facts of additional government involvement in order to resist a summary disposition in favor of defendant VFW," 500 F.2d at 791,

that Court remanded the case so that plaintiff might "make the kind of showing contemplated under Rule 56 in an effort to avoid summary judgment for the VFW." 500 F.2d at 791.

Now pending before this Court are cross-motions for summary judgment filed by the parties subsequent to the remand from the Court of Appeals. Plaintiff has been afforded additional time for discovery. As a result thereof, the Court now has before it the deposition of Francis W. Stover, National Legislative Director of VFW, and answers to interrogatories propounded to defendant by plaintiff. Oral argument has been heard on the pending motions. In addition to the memoranda and exhibits submitted in support of and in opposition to the respective motions, and the respective statements of material facts as to which there is no genuine issue,[1] the parties have submitted post-hearing memoranda. In addition to the foregoing the Court has considered the entire record herein, as well as the guidance provided by the Court of Appeals in remanding this action.

Although the record herein has been factually supplemented in the manner in-dicated in footnote 1 below, it is the opinion of the Court that these supplemental facts are not material to the issues decided previously by the Court in its original opinion. Further, the Court remains unpersuaded to change its holdings therein. Accordingly, the holdings of this Court in that opinion, 353 F.Supp. 473, and the reasons stated therein, are hereby affirmed. Specifically: (1) jurisdiction exists in this action under 28 U.S.C. § 1331; (2) the statutory charter of the VFW, 36 U.S.C. § 111 et seq., does not mandate discrimination on the basis of sex, and to the extent that plaintiff now argues that said statute authorizes or encourages discrimination on the basis of sex, this Court finds that it does not; and (3) Congressional chartering alone does not constitute the kind of significant government involvement in private discriminations that is violative of the equal protection guarantee in the due. process clause of the 5th Amendment.[2]

The supplemental record reveals that the following material facts herein are not in dispute: Plaintiff, a woman, is an honorably discharged veteran having served outside the United States and having received campaign medals for such service. On February 3, 1971, plaintiff, by letter, inquired of the VFW concerning membership and stated her desire to become a member thereof. In response to her inquiry, plaintiff received a letter from the Adjutant General of the VFW stating that she was ineligible for membership since the by-laws of the VFW restricted membership to males.

1. Plaintiff did not file a new statement of material facts as to which there is no genuine issue but relied upon the same statement she had filed before the appeal. The defendant filed a one-sentence conclusory statement saying "There are no facts of governmental involvement in the affairs of the Veterans of Foreign Wars sufficient to warrant the intervention of the Constitution of the United States or other federal statutes in this case." The plaintiff did not file a counter-statement. At the hearing on the cross-motions, plaintiff's counsel indicated that he was relying on the factors set forth in the opinion of the Court of Appeals. These factors were the subject of discovery by plaintiff and argument by both parties.

2. Cf., Jackson v. Metropolitan Edison Co., 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), wherein the Court held that the state-conferred monopoly status of a public utility is not determinative of whether its action was "state action." 419 U.S. 345, 95 S.Ct. 449.

Defendant VFW is a corporation[3] created and chartered by Act of Congress, 36 U.S.C. § 111 et seq., in 1936, having been before that time "a national association of men who as soldiers, sailors, marines and airmen have served this Nation in wars, campaigns, and expeditions on foreign soil or in hostile waters, . . ." 36 U.S.C. § 111. Congress gave the members of the VFW power to complete its organization including, *inter alia*, the power to adopt a constitution and bylaws, 36 U.S.C. § 112; set forth the purposes of the corporation, which are, *inter alia*, "fraternal, patriotic, historical, and educational," 36 U.S.C. § 113; gave the corporation traditional corporate powers, *e. g.*, "to sue and to be sued in courts of law and equity," 36 U.S.C. § 114; limited its membership to honorably discharged veterans of foreign service, which service entitled them to a recognized campaign medal, 36 U.S.C. § 115; provided for the acquisition of assets and liabilities of the existing association, 36 U.S.C. § 116; gave the new corporation the exclusive right to the name Veterans of Foreign Wars of the United States, the corporate seal, emblem and badges adopted by the corporation, 36 U.S.C. § 117; provided for a yearly report to Congress of its proceedings, which report "shall not be printed as a public document," 36 U.S.C. § 118;[4] provided that before the exercise of its corporate powers that there be registered in every state an agent for the service of process, 36 U.S.C. § 119; and expressly reserved the right "to repeal, alter, or amend" the chartering Act, 36 U.S.C. § 120.

Defendant makes yearly financial audits available to Congress pursuant to 36 U.S.C. §§ 1102 & 1103. Pursuant to 10 U.S.C. § 2572, VFW is entitled to loans or gifts of condemned or obsolete combat material, and has in fact received such material, including rifles and blank ammunition. This material is made available to local posts after certification to the Secretary of the Treasury by the national organization. The net worth of the VFW is approximately $20,000,000. The organization is mainly supported by dues paid by members which are split between the local chapter, the state organization, and the national organization. The VFW is exempt from tax on income pursuant to 26 U.S.C. § 501(c)(4). Contributors to the VFW are entitled to deduct their contributions from gross income. 26 U.S.C. § 170(c)(3). Gifts and contributions to the VFW have averaged less than $1,000 for the last three years.

Representatives from the VFW have been recognized by the Administrator of the Veterans' Administration, pursuant to 38 U.S.C. § 3402(a)(1), for the purpose of representing veterans under laws administered by the Veterans' Administration. The VFW has approximately 75–100 full-time representatives handling veterans' claims. These representatives represent all veterans, not just members. Counsel for defendant has represented at oral argument that this includes both men and women. There is no evidence to the contrary. Pursuant to 38 U.S.C. § 3402(a)(2), the Administrator of the Veterans' Administration has furnished office space to the paid full-time representatives from the VFW. In the last three years, representatives from the VFW have handled more than 800,000 veterans' claims to successful conclusions.

In dispute herein is the ultimate conclusion of law to be drawn from the above-mentioned facts, *i. e.*, whether there is a sufficient nexus between the Government's involvement with the VFW's exclusionary membership policy so as to make the challenged action "state action" and thus subject VFW to the restrictions of the 5th Amendment.

3. There are nearly two million members of VFW.

4. 44 U.S.C. § 1332 provides that the proceedings of the national encampments of the VFW are to be published as Congressional documents.

Governmental action, or "state action", will not be found where there is insignificant governmental involvement with the challenged action of a private entity, even where that entity is otherwise heavily regulated by the government. *See* Jackson v. Metropolitan Edison Company, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); Moose Lodge v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); Brown v. D. C. Transit System, D.C.Cir., No. 73-2089, (decided February 28, 1975); New York City Jaycees v. United States Jaycees, 512 F.2d 856 (CA 2, 1975). As the Supreme Court recently stated in *Jackson:*

> "[T]he inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the [challenged] action of the latter may be fairly treated as that of the State itself. *Moose Lodge No. 107, supra,* 407 U.S. at 176 [92 S.Ct. 1965 at 1973]. The true nature of the State's involvement may not be immediately obvious, and detailed inquiry may be required in order to determine whether the test is met. Burton v. Wilmington Parking Authority [365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961)]." 419 U.S. at 351, 95 S.Ct. at 453.

This inquiry takes the form of a "sifting of facts and weighing circumstances." *Burton, supra,* 365 U.S. at 722, 81 S.Ct. at 860.

Having sifted the facts and weighed the circumstances herein, the Court finds itself unpersuaded that the government is in any way significantly involved with the exclusionary membership policy of the VFW.

36 U.S.C. § 118 provides that the VFW shall make a yearly report to Congress of its proceedings which report "shall not be printed as a public document." Section 118 has been modified by 44 U.S. C. § 1332 which provides that proceedings of the national encampments of certain veterans' organizations, including the VFW, are to be printed as Congressional documents. 36 U.S.C. §§ 1102 & 1103 establish uniform auditing and financial reporting requirements for private federally-chartered corporations which are required by statute to make such reports. 1964 U.S.Code Congressional and Administrative News at 3229. The VFW is one such organization required to make such reports. 36 U.S.C. § 1101(47). Clearly, having granted a federal charter to an organization, Congress has an interest in seeing that such a corporation handles itself responsibly: that Congress retains power to "repeal, alter, or amend" the charter of the VFW, 36 U.S.C. § 120, is indicative of this vested interest. Certainly, regulations requiring reports on proceedings and financial audits to be prepared and presented to Congress is one method of determining whether an organization is acting responsibly. However, such regulations do not, explicitly or impliedly, authorize, encourage, mandate, foster, or relate to the VFW's internal membership policy. In *Jackson, supra,* petitioners made a similar, albeit factually stronger, argument, *viz.,* that the challenged termination practice by a public utility had been "specifically authorized and approved" by the State because the utility had filed a general tariff with the Public Utilities Commission, a provision of which stated the utility's right to terminate service for non-payment. 419 U.S. at 345, 95 S.Ct. 449. Rejecting this contention, the Court stated:

> "Approval by a state utility commission of such a request from a regulated utility, where the Commission has not put its own weight on the side of the proposed practice by ordering it, does not transmute a practice initiated by the utility and approved by the Commission into 'state action.' At most, the Commission's failure to overturn this practice amounted to no more than a determination that a Pennsylvania utility was authorized to employ such a practice if it so desired. Respondent's exercise of the

choice allowed by state law where the initiative comes from it and not from the State, does not make its action in doing so 'state action' for purposes of the Fourteenth Amendment." (Footnote omitted). 419 U.S. at 357, 95 S.Ct. at 456.

In the present action, where the federal charter gives defendant the freedom of enacting whatever bylaws it sees fit, 36 U.S.C. § 112, where defendant has exercised this freedom so as to exclude females from membership, and where the initiative for the enactment of this bylaw came from defendant, the fact that Congress requires reports and financial audits of the VFW does not transform the exclusionary membership policy of the VFW into "state action" for purposes of the 5th Amendment.

Pursuant to 10 U.S.C. § 2572, local posts of the VFW, as well as "local unit[s] of any other recognized war veterans' association," are entitled to loans or gifts of condemned or obsolete combat material. There is evidence that local VFW posts have in fact received such material, e. g., rifles and blank ammunition. Plaintiff contends that this factor constitutes a significant involvement between the government and the VFW. The Court rejects this contention. While the statute is indicative of a benevolent attitude of government towards war veterans' organizations, it in no way serves to imply congressional approval of any organization's internal policy, including the conduct of the VFW challenged herein.

■ The VFW is exempted from a tax on income, 26 U.S.C. § 501(c)(4), and contributions to the VFW are allowed as deductions from the gross income of contributors. 26 U.S.C. § 170(c)(3).[5]

VFW is not specifically named in these statutes but falls into the category of charitable and war veterans' organizations therein described. Plaintiff contends that defendant's tax status "reveal[s] a congressional intent to implement a social and economic policy of government assistance to the VFW," and "congressional approval of VFW activities and purposes, as well as its performance of [a] public function. . . ."[6] In *New York City Jaycees, supra,* wherein a local chapter of the Jaycees was challenging the exclusionary membership policy of the national organization, females being the object of the exclusion, the Second Circuit Court of Appeals, in response to the exact contention advanced herein, said:

"... [T]he grant of tax exemptions to the Jaycees does not constitute significant government involvement in the organization's exclusionary membership policy. As the Supreme Court has pointed out in the context of a First Amendment challenge to tax exemptions granted to religious organizations, a tax exemption does not constitute government 'sponsorship' but instead 'creates only a minimal and remote involvement.' Walz v. Tax Commission, 397 U.S. 664, 675–76, 90 S.Ct. 1409, 1415, 25 L.Ed.2d 697 (1970). See also Marker v. Shultz, 158 U.S.App.D.C. 224, 485 F.2d 1003, 1005–07 (1973). No genuine nexus between the tax exemption and the complained of internal membership policies has been shown and in its absence, there is no constitutional wrong." 512 F.2d at 859.[7]

Accordingly, this Court finds no nexus between the exclusionary internal membership policy of the VFW and its tax

5. Contributions to the VFW are minimal. Stover deposition at 9; plaintiff's answer to defendant's interrogatory #4, filed September 13, 1975.

6. Plaintiff's "public function" argument is addressed *infra.*

7. Plaintiff relies on McGlotten v. Connally, 338 F.Supp. 448 (D.D.C.1972) (three-judge

court). *McGlotten* is distinguishable because, *inter alia,* government involvement with racial discrimination, as alleged in *McGlotten,* has apparently been treated more strictly than other types of discriminations, see *McGlotten,* 338 F.Supp. at 459 n. 58; Spark v. Catholic University of America, 510 F.2d 1277 at 1282–1283 (D.C.Cir. 1975).

status, and holds that plaintiff's contention on this point is unavailing. The grant of these tax exemptions does not suggest congressional approval of the challenged conduct.

■ 38 U.S.C. § 3402(a)(1) authorizes the Administrator of the Veterans' Administration, in his discretion, to recognize representatives of certain named organizations, and representatives of "such other organizations as he may approve" for the preparation, presentation and prosecution of claims under laws administered by the Veterans' Administration. The VFW is among the specifically named organizations. Section 3402(a)(2) authorizes the Administrator, in his discretion, to furnish "office facilities for the use of paid full-time representatives of national organizations so recognized." Sections 3403 and 3404 of Title 38 authorize the Administrator, in his discretion and under certain conditions, to recognize individuals for the preparation, presentation and prosecution of claims. It is undisputed that representatives from the VFW have been so recognized and that office space has been furnished to these representatives by the Administrator for their use. Plaintiff asserts that defendant performs a "public function," in that it performs functions traditionally reserved to the government, and that the defendant should be subject to the same constitutional restrictions as the government. *See,* *e. g.,* Evans v. Newton, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966).[8] In *New York City Jaycees,* the Court in rejecting a similar contention therein, said:

"The public function theory applies only to those services which are 'so clearly governmental in nature that the state cannot be permitted to escape responsibility by allowing them to be managed by a supposedly private agency.' Powe v. Miles, 407 F.2d 73, 80 (2d Cir. 1968). Furthermore,

the Supreme Court in its recent decision in Jackson v. Metropolitan Edison Company, *supra,* has suggested that the service involved must not only be one which is traditionally the exclusive prerogative of the state but that it must in addition be one which the state itself is under an affirmative duty to provide, Id., 419 U.S. at 351, 95 S.Ct. at 454. In *Jackson,* the Court specifically declined to find state action on a public function theory despite the fact that defendant was a utility company, provided an essential public service, enjoyed a state-protected partial monopoly and was subject to extensive regulation by the state. Certainly the public function argument is far less persuasive in the situation before us here. Moreover, as has been pointed out, plaintiff's claim does not relate in any way to the public services provided by the Jaycees, but only to the internal membership policies of the organization." 512 F.2d at 860.

In the instant action, it is far less than clear that the government has an "affirmative duty to provide" representatives to prosecute claims against itself. The Administrator's recognition of representatives from the VFW and the other named organizations confers no implicit approval on the internal membership policies of these organizations and fails to establish a sufficiently close nexus between the government and the challenged conduct of defendant. Further, it should be pointed out that there is no claim that VFW discriminates in representing claims before the Veterans' Administration. The undisputed evidence is that defendant represents all veterans not just its own members. Stover deposition at 20. Accordingly, the Court rejects plaintiff's "public function" argument.

Undoubtedly, "[t]he foregoing factors establish a color of government involvement with the VFW that is not ade-

8. The corollary to this proposition is that all *individuals* recognized by the Administrator to prepare, present and prosecute veterans' claims, pursuant to 38 U.S.C. §§ 3403 and

3404, would be acting in that capacity as government agents and be subject to the same restrictions.

quately described as 'Congressional chartering.'" *Stearns, supra,* 500 F.2d at 790. These factors, however, examined seriatim and in the aggregate, fail to establish a "sufficiently close nexus" between the government and the VFW "so that the [challenged] action of the latter may be fairly treated as that" of the government. *Jackson,* 419 U.S. at 351, 95 S.Ct. at 453. Significantly, there is no allegation that the government exercises control, attempts to exercise control, or otherwise intervenes with the VFW's internal policies. There certainly appears no symbiotic relationship as found in *Burton*; and the circumstances are clearly less compelling than those which appeared in *Moose Lodge* (racial discrimination) and *Jackson* (state-granted monopoly). No circumstances presented suggest any government approval of the challenged conduct. Since the Court holds that there is no government action herein, it is unnecessary to reach the question of whether there is a reasonable basis to exclude women from membership in the VFW. Accordingly, summary judgment will be entered for defendant.