Robert S. SCIOLINO, Plaintiff,

v.

MARINE MIDLAND BANK–WESTERN, William Taylor, Richard Diana and Charles Schumacher, Defendants.

No. CIV–75–523.

United States District Court, W. D. New York.

Jan. 4, 1979.

Kenneth L. Cooper, Parrino, Cooper, Butler & Dobson, Buffalo, N. Y., for plaintiff.

David K. Floyd, Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, N. Y., for defendants.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

Plaintiff is the president of an automobile dealership, Main Chrysler Plymouth, Inc. ("Main"), which fell upon hard times in 1974. On December 3, 1974, pursuant to a security agreement between it and Main, Marine Midland Bank-Western ("Marine") exercised its option under New York's Uniform Commercial Code § 9–503 and physically took over the operation of Main through Marine's agents, William Taylor, Richard Diana and Charles Schumacher. Marine then proceeded to dispose of Main's collateral under section 9–504. Plaintiff strenuously objected to such procedures.

Prior to the filing of the instant complaint plaintiff, with his wife and Main joined as additional parties plaintiff, brought an action in New York State Supreme Court, Erie County, solely against Marine. Such action is pending undetermined in the state court. Therein such plaintiffs seek monetary damages for harm allegedly resulting from various claimed wrongful acts of Marine in the course of its taking possession of the inventory and oth-

er security at the automobile dealership. In particular, it is alleged in the state complaint:

"That the acts of the defendant consisted of among other things the following:

\* \* \* \* \* \*

"b. Seizing all the property of the defendant [sic], MAIN CHRYSLER PLYMOUTH, INC., including the mail."

Six days after the institution of the state action, Robert S. Sciolino, as the sole plaintiff, filed in this court the instant complaint naming Marine and its three said agents as defendants. The federal complaint basically alleges that defendants intercepted, opened and retained the sealed first-class letters deposited in the United States mails and addressed to plaintiff and to Main and seeks declaratory relief and money damages.

Defendants have moved this court for a dismissal of the federal complaint or, in the alternative, for a stay of this federal action pending disposition of the state action, on the grounds that the prior state action seeks the same relief as is sought in the federal complaint and that plaintiff has wrongfully split his alleged cause of action. At the argument of the motion, defendants' attorney orally additionally moved this court to dismiss the federal complaint for its failure to state a cause of action upon which relief can be granted.

Before considering defendants' motions this court must consider the sufficiency of plaintiff's allegations of jurisdiction (even though the complaint is subject to being stricken for non-compliance with rule 11 of the Federal Rules of Civil Procedure to which the attention of plaintiff's attorneys is hereby invited). Plaintiff alleges that jurisdiction of this court rests upon 28 U.S.C. §§ 1331(a), 1339 and 1343 and 5 U.S.C. § 702. This shotgun approach indicates a justified uncertainty in plaintiff's mind as to jurisdiction and, as often occurs with the shotgun, its scattered pellets miss the target.

■ The claim of jurisdiction under 5 U.S.C. § 702 can be dismissed out of hand. Such section applies only to a governmental agency's action and the jurisdiction of district courts to review such action. Nothing in the federal complaint speaks of agency action and no review of any such action is sought.

■ Similarly, the claim of jurisdiction under 28 U.S.C. § 1339 must also be dismissed. That section states:

"The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to the postal service."

The section bestows special jurisdiction and must be strictly construed. A civil claim arising out of an alleged violation of penal statutes relating to the mails—i. e., 18 U.S.C. §§ 1701, 1702, 1703, 1708 and 1709 [1]

1. Sections 1703 and 1709 are applicable only to acts of officers or employees of the postal service and are not pertinent here inasmuch as defendants are neither. *United States v. Blierley*, 331 F.Supp. 1182, 1183 (W.D.Pa.1971). Section 1708 is not applicable once the items in question have left the possession of the post office and no longer are in a mail receptacle. *United States v. Johnson*, 463 F.2d 216 (9th Cir.), *cert. denied, sub nom. Gant v. United States*, 409 U.S. 1028, 93 S.Ct. 472, 34 L.Ed.2d 322 (1972); *United States v. Birnstihl*, 441 F.2d 368 (9th Cir. 1971). According to the complaint herein, the letters which were intercepted and opened and the contents of which were kept had "been delivered" to plaintiff and Main at the latter's offices. The inference of which *United States v. Hines*, 256 F.2d 561, 563–64 (2d Cir. 1958), speaks is not applicable in the face of plaintiff's own assertions. Similarly,

section 1701 appears not to be here involved; such section is concerned only with *obstruction* or *retardation* of the passage of the mail. (Such passage, admittedly, has been defined as extending to the time of delivery of the mail to its addressee. *United States v. Fleming*, 479 F.2d 56, 57 (10th Cir. 1973). While a mail carrier who threw away certain mailed matter without attempting to deliver it was held to have obstructed and retarded the passage of the mail, *ibid.*, as had a non-employee who found undelivered letters near a postal collection box and threw them away [after opening them and removing the contents of some], *United States v. Takacs*, 344 F.Supp. 947 (W.D.Okl.1972), what defendants are here charged with does not amount to such.) However, that of which plaintiff complains civilly is within the criminality dealt with in and by section 1702 (and, in

—is not the type of action envisioned under this section. *Schiaffo v. Helstoski,* 492 F.2d 413 (3rd Cir. 1974), *Adams v. Ellis,* 197 F.2d 483 (5th Cir. 1952), and *Paton v. La Prade,* 382 F.Supp. 1118 (D.N.J.1974), *vacated and remanded,* 524 F.2d 862 (3rd Cir. 1975), are not to the contrary.

■ When a claim is alleged to arise under the Constitution or laws of the United States and the matter in controversy exceeds the sum or value of $10,000, a district court has jurisdiction under 28 U.S.C. § 1331(a) except (possibly) when the alleged claim appears to be immaterial and made solely for purpose of obtaining jurisdiction or where it is wholly insubstantial and frivolous. See *Bell v. Hood,* 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946).[2] Plaintiff's complaint contains claims under the First, Fourth, Fifth and Ninth Amendments for violations of his rights to privacy and security. His action is against private individuals and a corporation. The first ten amendments to the Constitution limit the powers of the federal government and do not so by themselves expand individual causes of action against other individuals which were unknown to the common law. Therefore, inasmuch as no federal official or agent or action is involved, there is no federal question jurisdiction arising directly under the specified amendments. *Bell v. Hood,* 71 F.Supp. 813, 816 (S.D.Cal.1947) (approved by the Second Circuit Court of Appeals in *Bivens v. Six Unknown Named Agents of Fed. Bur. of Nar.,* 409 F.2d 718, 724 (1969); although the *Bivens* decision was reversed by the United States Supreme Court, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), there was no derogation

of such approval). *See, also, New York City Jaycees, Inc. v. United States Jaycees, Inc.,* 512 F.2d 856, 858 (2d Cir. 1975).

■ Plaintiff also seeks to support federal question jurisdiction by claiming that defendants violated 18 U.S.C. §§ 1702 and 1703(b).[3] These sections are penal in nature. Violation of a penal statute does not alone support an allegation of federal question civil jurisdiction. *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975); *Nashville Milk Co. v. Carnation Company,* 355 U.S. 373, 78 S.Ct. 352, 2 L.Ed.2d 340 *reh. denied,* 355 U.S. 967, 78 S.Ct. 530, 2 L.Ed.2d 542 (1958); *Napper v. Anderson, Henley, Shields, Bradford & P.,* 500 F.2d 634, 636 (5th Cir. 1974), *reh. denied,* 507 F.2d 723 (5th Cir.), *cert. denied,* 423 U.S. 837, 96 S.Ct. 65, 46 L.Ed.2d 56 (1975); *Fagundez v. Oakland Raiders Professional Football Club,* 498 F.2d 1394 (Em.App. 1974); *Chavez v. Freshpict Foods, Inc.,* 456 F.2d 890, 893–94 (10th Cir.), *cert. denied,* 409 U.S. 1042, 93 S.Ct. 535, 34 L.Ed.2d 492 (1972); *Oppenheim v. Sterling,* 368 F.2d 516, 518–19 (10th Cir. 1966), *cert. denied,* 386 U.S. 1011, 87 S.Ct. 1357, 18 L.Ed.2d 441, *reh. denied,* 388 U.S. 925, 87 S.Ct. 2127, 18 L.Ed.2d 1380 (1967) and 389 U.S. 1059, 88 S.Ct. 757, 19 L.Ed.2d 861 (1968); Note, *Implying Civil Remedies from Federal Regulatory Statutes,* 77 Harv.L.Rev. 285 (1963–4). *Cf., Odell v. Humble Oil & Refining Co.,* 201 F.2d 123, 126–27 (10th Cir.), *cert. denied,* 345 U.S. 941, 73 S.Ct. 833, 97 L.Ed. 1367 (1953). *Cort v. Ash, supra,* presented as its principal issue "whether a private cause of action for damages against corporate directors is to be implied in favor of a corporate stockholder under 18 U.S.C. § 610, a

---

spite of *Blierley, supra,* possibly the second paragraph of Section 1703(b)).

**2.** It was therein declared:

"* * * a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous. The accuracy of calling these dismissals jurisdictional has been questioned. *The Fair v. Kohler Die Co.,* [228 U.S. 22,] 25 [33 S.Ct. 410,

57 L.Ed. 716]. But cf. *Swafford v. Templeton,* [185 U.S. 487, 22 S.Ct. 783, 46 L.Ed. 1005]." Respectfully, it must be noted that Mr. Justice Holmes in the referenced *Kohler* case, 228 U.S. at page 25, 33 S.Ct. 410, recognized jurisdictional dismissal "in form" where the claim is frivolous and only mandated a finding of jurisdiction where plaintiff "really makes a substantial claim". But cf. *Wheeldin v. Wheeler,* 373 U.S. 647, 649, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963), and *Swafford, supra,* 185 U.S. at 493–94, 22 S.Ct. 783.

**3.** See footnote 1, above.

criminal statute prohibiting corporations from making 'a contribution or expenditure in connection with any election at which Presidential and Vice Presidential electors . . . are to be voted for.'" *Id.,* 422 U.S., at 68, 95 S.Ct., at 2083. The Court concluded that it was not. In reaching such determination—unanimously—the following criteria were enunciated at page 78, 95 S.Ct. at page 2088:

"In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted,' *Texas & Pacific R. Co. v. Rigsby,* 241 U.S. 33, 39, [36 S.Ct. 482, 60 L.Ed. 874] (1916) (emphasis supplied)—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? See, *e.g., National Railroad Passenger Corp. v. National Assn. of Railroad Passengers,* 414 U.S. 453, 458, 460, [94 S.Ct. 690, 38 L.Ed.2d 646] (1974) (*Amtrak*). Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? See, *e.g., Amtrak, supra; Securities Investor Protection Corp. v. Barbour,* 421 U.S. 412, 423, [95 S.Ct. 1733, 44 L.Ed.2d 263] (1975); *Calhoon v. Harvey,* 379 U.S. 134, [85 S.Ct. 292, 13 L.Ed.2d 190] (1964). And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? See *Wheeldin v. Wheeler,* 373 U.S. 647, 652, [83 S.Ct. 1441, 10 L.Ed.2d 605] (1963); cf. *J. I. Case Co. v. Borak,* 377 U.S. 426, 434, [84 S.Ct. 1555, 12 L.Ed.2d 423] (1964); *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 394–395, [91 S.Ct. 1999, 29 L.Ed.2d 619] (1971); *id.,* at 400, [91 S.Ct. 1999] (Harlan, J., concurring in judgment)."

Prior to such formalization, the seminal and much-cited authority was Judge Learned Hand's decision in *Reitmeister v. Reitmeis-ter,* 162 F.2d 691 (2d Cir. 1947), wherein was presented *inter alia* the question whether the District Court has jurisdiction over a civil action seeking damages for an alleged violation of the Communications Act of 1934, 47 U.S.C. § 605. Certain telephone conversations had been recorded and, without the consent or authorization of their sender, had been played and received in evidence to the detriment of such sender in proceedings in a Surrogate's Court of the State of New York. While there was a lack of unanimity as to one aspect of the decision and Judge Hand found himself a dissenter as to that facet while authoring the majority opinion, there was agreement as to the following ruling (p. 694):

"The first questions are whether the Communication Act of 1934, 47 U.S.C.A. § 151 et seq., imposes a civil, as well as a criminal, liability upon anyone who 'publishes' a telephone message, and whether, if so, the District Court had jurisdiction over the action. Although the Act does not expressly create any civil liability, we can see no reason why the situation is not within the doctrine which, in the absence of contrary implications, construes a criminal statute, enacted for the protection of a specified class, as creating a civil right in members of the class, although the only express sanctions are criminal. In *Newfield v. Ryan* [91 F.2d 700], the Fifth Circuit has already implied as much as to § 605; and we too have so suggested ourselves in *United States v. Goldstein* [2 Cir., 120 F.2d 485]. That the District Court had jurisdiction, if there was a civil right, is too plain for debate. It is true that in the case at bar the message was not interstate, and verbally the section is limited to interstate and foreign messages; but the Supreme Court has held that the section forbids the 'interception' of intrastate messages if sent over interstate wires, and the civil right must be coextensive with the criminal liability."

*Reitmeister* gives me some pause in reaching the determination that one does not have a civil cause of action under 18 U.S.C. § 1702 and/or § 1703(b), and that there is

not federal subject matter jurisdiction of such cause of action set forth frivolously and without substance.[4] Not only is its source such that it binds me to mind its teaching but, although it was not concerned with postal penal laws, it did deal with subject matter not patently dissimilar. *Reitmeister* holds that persons who use interstate telephonic communications systems (and even parts thereof for intrastate telephone calls) comprise a class specially benefitted by the penal provisions of the Communications Act of 1934 and may sue civilly for damages brought upon by them by violations of such provisions. Congress has pre-empted that field and state law must yield and does not apply. 162 F.2d, at pp. 696–97. The delivery of the mails and the protection of the contents of the mails have been primarily, and perhaps totally, the concerns of the United States Government since long prior to 1934. Are not all users of such mails, whether senders or addressees, the intended beneficiaries of the laws instituting and regulating, by criminal penalties and otherwise, what now is the United States Postal Service? In *Reitmeister* a sender was deemed specially protected and thus entitled to civil relief whereas the plaintiff here was an intended receiver or addressee; but is that a meaningful difference? It would seem not to be, and yet I am reluctant to extend this right of civil action to one allegedly damaged by the violation of either section 1702 or section 1703(b). The class comprised of users of the mails seems significantly more vast than even that of users of our telephones. If users of the mails gain civil litigative status by virtue of these sections, it would be exceedingly difficult to rule out civil actions by anyone damaged by the contravention of any penal statute. Users of the mails comprise a group so general that I cannot and do not find them to be a "specified class" (*Reitmeister*, at 694) or a "class for whose especial benefit" (*Cort v. Ash*, 422 U.S. at 78, 95 S.Ct. 2080) these penal provisions were enacted. In *Ivy Broadcast-ing Co. v. American Tel. & Tel. Co.*, 391 F.2d 486 (2d Cir. 1968), it was stated (at 493):

"Our holding that the district court has jurisdiction under § 1331 of plaintiff's actions [alleging negligence and breaches by the lessor of telephone lines] * * * does not imply that federal jurisdiction extends to any case which involves some reference to federal law; that federal law furnishes a necessary ingredient of a claim is insufficient as a basis for federal jurisdiction, unless the claim presents an issue requiring construction of an Act of Congress or unless a distinctive policy of an Act of Congress requires that federal principles control the disposition of the claim."

*Cf., Schiaffo v. Helstoski, supra*, at 425–26.

An early case, *Harper v. Endert*, 103 F. 911 (C.C., N.D.Cal. 1900), presented a civil action brought under the aegis of section 3995 of the Revised Statutes (the predecessor of 18 U.S.C. § 1701) but the court did not deal with the precise question presented here. Therein one who had a contract for the carriage of the mail and who in the performance of such contract necessarily had to use defendants' toll road complained that the exaction of the toll by defendants violated this penal law and entitled him to injunctive and monetary relief. Defendants demurred on grounds of lack of jurisdiction, non-entitlement to such relief, insufficiency of the bill's factual allegations and existence of an adequate remedy at law. The court held that the amount in suit was not sufficient to give it jurisdiction and that plaintiff had no cause of action in any event because defendants had a lawful right to exact the toll from all who used their road, subject only to certain state-enumerated exemptions which did not include a carrier of the United States mails.

The Court of Civil Appeals of Texas affirmed a jury verdict and judgment for plaintiffs' actual damages occasioned by their failure to consummate the sale of

---

4. But, see, *Nolan v. Meyer*, 520 F.2d 1276 (2d Cir.), *cert. denied*, 423 U.S. 1034, 96 S.Ct. 567, 46 L.Ed.2d 408 (1975).

certain realty due to their not having timely received a letter from the prospective purchaser. Plaintiffs for that reason had not complied with requests made by the purchaser in the epistle and he refused to buy. The letter had been addressed to Adolph Cohen, one of the plaintiffs, and had been delivered by the post office to defendant, Abraham Cohen, and the latter had retained possession of it for several days. The court ruled that "[i]n this case defendant owed plaintiff the duty (enjoined by Rev. St. U.S. § 3892) not to obstruct his mail, and a breach of this duty rendered him liable for damages to plaintiff's estate proximately resulting therefrom." *Cohen v. Cohen*, 26 Tex.Civ.App. 315, 63 S.W. 544 (1901).

*Adams v. Ellis, supra*, presented the Fifth Circuit Court of Appeals with a former state prisoner's claim for monetary damages for the prison officials having violated his letters and packages while in the United States mails, in contravention of 18 U.S.C. §§ 1702 and 1708. The lower court's dismissal for lack of jurisdiction was affirmed because a prisoner has no right of unrestricted freedom in the receipt and transmission of mail, the prison authorities having the right of censorship of prisoners' mail.

In *United States ex rel. Pope v. Hendricks*, 326 F.Supp. 699 (E.D.Pa., 1971), a state prisoner allegedly was not allowed to send or receive mail and sued for monetary damages for such and other claimed deprivations of his Constitutional rights. Generally, the court found it had jurisdiction and conducted a bench trial. However, as to claims arising by virtue of 18 U.S.C. § 1702 the court ruled as follows (p. 701):

"Plaintiff asserts that the withholding of his mail constituted a violation of 18 U.S.C.A. § 1702. However, the Court need not make this decision. It is clear that this section of the Code is a criminal section designed to serve as authority for action by a United States Attorney and does not give rise to a cause of action for personal injuries." (Underscoring added.)

■ Plaintiff's claim does not fit the exception of *Reitmeister, supra.* Therefore, there is no federal question jurisdiction under 28 U.S.C. § 1331(a).

■ Plaintiff's final plea for federal jurisdiction is bottomed upon 28 U.S.C. § 1343. This hope must, however, also be unfulfilled. The complaint's allegation of a cause of action under 42 U.S.C. § 1985(3) for a conspiracy to violate his civil rights is completely frivolous and insubstantial. First, section 1985 applies only where there is racial or other class-based bias. *Raitport v. Chase Manhattan Capital Corp.*, 388 F.Supp. 1095 (S.D.N.Y. 1975). Second, a corporation cannot conspire with itself and/or its agents or officers. *Milburn v. Blackfrica Promotions, Inc.*, 392 F.Supp. 434 (S.D.N.Y. 1974). Third, a conspiracy among the individual defendants is not properly alleged for redress under section 1985 if the acts complained of are not of a personal nature and only had connection with their corporate-employer's affairs. *Girard v. 94th St. & Fifth Ave. Corp.*, 530 F.2d 66, 70–72 (2d Cir.), *cert. denied*, 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976). Jurisdiction does not lie under 28 U.S.C. § 1343.

■ At oral argument, plaintiff attempted to state a claim under 42 U.S.C. § 1983. To support this claim, plaintiff alleged that Marine's self-help procedures under the Uniform Commercial Code constituted state action. This argument is clearly refuted by the case law in this Circuit. *Bond v. Dentzer*, 494 F.2d 302 (2d Cir.), *cert. denied*, 419 U.S. 837, 95 S.Ct. 65, 42 L.Ed.2d 63 (1974); *Shirley v. State National Bank of Connecticut*, 493 F.2d 739 (2d Cir.), *cert. denied*, 419 U.S. 1009, 95 S.Ct. 329, 42 L.Ed.2d 284 (1974).

It is the decision of this court that plaintiff has completely failed to allege sufficient and proper facts upon which this court can find jurisdiction. Therefore, plaintiff's complaint must be dismissed for lack of jurisdiction and such dismissal is hereby ORDERED.

This court not having jurisdiction, defendants' motion relating to splitting of a

cause of action and defendants' oral motion to dismiss for failure to state a cause of action upon which relief may be granted are not reached. *Bell v. Hood, supra,* 327 U.S., at 682, 66 S.Ct. 773.