ZAPPIA MIDDLE EAST CONSTRUC-
TION COMPANY LIMITED,
Plaintiff–Appellant,

v.

The EMIRATE OF ABU DHABI, Abu
Dhabi Investment Authority, and Abu
Dhabi Commercial Bank, Defendants–
Appellees.

Docket No. 99–7272

United States Court of Appeals,
Second Circuit.

Argued: Dec. 14, 1999

Decided: June 12, 2000

plaint for lack of subject matter jurisdiction. The district court held that the plaintiff failed to establish facts sufficient to bring the action within the purview of the expropriation exception of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605(a)(3) (1994). We affirm.

## BACKGROUND

On an appeal from an order granting a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), we review the district court's factual findings for clear error and its legal conclusions de novo. *See Woodward Governor Co. v. Curtiss–Wright Flight Sys., Inc.*, 164 F.3d 123, 126 (2d Cir.1999).

ZMEC is a construction company incorporated in the British Virgin Islands with a place of business in Canada. ZMEC is owned by Joseph Zappia. Mr. Zappia is a citizen of Italy and Canada and a resident of Rome, though at all times relevant to this action he resided in the Emirate of Abu Dhabi. Defendant-appellee Abu Dhabi Investment Authority ("ADIA") is an investment institution wholly owned by Abu Dhabi. ADIA owns a majority of the shares of defendant-appellee Abu Dhabi Commercial Bank ("ADCB").

From 1979 to 1982, ZMEC entered into a series of eight construction contracts in Abu Dhabi to build public works facilities in the Emirate. The contracts called for the Emirate to make periodic progress payments to ZMEC. In mid–1982, the Emirate delayed making payments, and in some instances refused to pay ZMEC the monies due under the contracts. The Emirate also allegedly forced ZMEC to perform work beyond that specified in the contracts. To remain solvent, ZMEC borrowed funds from Emirates Commercial Bank ("ECB") on unfavorable terms.

In January 1983, ZMEC reached the limit of its credit with ECB. On January

E. Lawrence Barcella, Jr., Paul, Hastings, Janofsky & Walker LLP, Washington, DC, for Plaintiff–Appellant.

Ronald S. Liebman, Patton Boggs LLP, Washington, DC, for Defendants–Appellees.

Before: FEINBERG, LEVAL, Circuit Judges, and PAULEY, District Judge.*

PAULEY, District Judge:

Plaintiff-appellant Zappia Middle East Construction Company Limited ("ZMEC") appeals from an order of the United States District Court for the Southern District of New York (Wood, *J.*) dismissing its com-

---

* The Honorable William H. Pauley III, of the United States District Court for the Southern District of New York, sitting by designation.

10, 1983, ZMEC entered into an agreement with ECB (the "1983 Agreement") pursuant to which day-to-day management of ZMEC was turned over to another construction contractor, Bovis International Limited ("Bovis"), and supervision of ZMEC was turned over to a management committee comprised of three representatives of ECB, one representative of Bovis, and Mr. Zappia or alternatively his assistant. The 1983 Agreement also prevented ZMEC from incurring any further debts or liabilities without the written consent of ECB.

ZMEC alleges that Mr. Zappia signed the 1983 Agreement under threat of imprisonment. At the January 10, 1983 meeting, ECB also forced Mr. Zappia to surrender his passport. Thereafter, Mr. Zappia's passport was withheld until the Emirate's acting Interior Minister returned it months later.

Ten days after the 1983 Agreement was executed, ECB wrote to Sheikh Kalifa Bin Zayed Al Nahyan ("Sheikh Kalifa"), the Crown Prince of Abu Dhabi and the Chairman of Abu Dhabi's executive council, petitioning him to direct the various government departments to extend the duration of ZMEC's projects so that Bovis could complete them.

In July 1985, more than two years after the execution of the 1983 Agreement, ECB and two other banks were recapitalized by the Emirate and merged into the newly formed ADCB. By then, several of the construction projects had been completed and Bovis was liquidating ZMEC's construction equipment and preparing claims for compensation on ZMEC's behalf. After the merger, Bovis completed the remaining projects and sold the rest of ZMEC's construction equipment. No proceeds from the sales of equipment were paid to the Emirate or ADIA, and none of the equipment or the proceeds of the sales are present in the United States.

In 1994, ZMEC instituted this suit seeking payments under the original construction contracts. ZMEC alleged that the defendants had taken its property in violation of international law and asserted jurisdiction based upon the expropriation exception to the FSIA, 28 U.S.C. § 1605(a)(3). The case was referred to a magistrate judge for pretrial management and a report and recommendation on dispositive motions. The defendants promptly moved to dismiss the complaint for lack of subject matter jurisdiction. The parties subsequently conducted two years of discovery solely on the jurisdictional issue.

Based on the documentary evidence amassed by the parties, the magistrate judge concluded in a thorough report and recommendation that there was no evidence that ECB was controlled by the Emirate or the royal family. Consequently, the magistrate judge determined that no expropriation by the sovereign had taken place. Adopting the report and recommendation, the district judge also concluded that the evidence did not support ZMEC's assertions that the Emirate expropriated ZMEC's property and dismissed the complaint.

ZMEC appeals the district court's finding that rights in intangible property are not "rights in property" under the FSIA, and that there was no expropriation by Abu Dhabi and ADIA. ZMEC also asserts that the district court abused its discretion in failing to hold an evidentiary hearing on the jurisdictional issues.

## DISCUSSION

### I. The Expropriation Exception

It is undisputed that the defendants-appellees are either foreign sovereigns or instrumentalities of a foreign sovereign. In actions against foreign sovereigns or their instrumentalities, the FSIA provides the sole basis for obtaining subject-matter jurisdiction of United States courts. *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434–39, 109 S.Ct. 683, 688–90, 102 L.Ed.2d 818 (1989); *Transatlantic Shif-*

*fahrtskontor GmbH v. Shanghai Foreign Trade Corp.*, 204 F.3d 384, 388 (2d Cir. 2000). The FSIA was enacted "to address 'the potential sensitivity of actions against foreign states.' [It] aimed 'to facilitate and depoliticize litigation against foreign states and to minimize irritations in foreign relations arising out of such litigation.'" *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir. 1993) (quoting H.R.Rep. No. 1487, at 45 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6631, 6634). Under the FSIA a foreign sovereign and its instrumentalities are immune from suit in the United States courts unless a specific statutorily defined exception applies.

 Although this action involves a commercial contract dispute, the FSIA "commercial activities" exception, 28 U.S.C. § 1605(a)(2)(1994), does not apply because no commercial acts or their effects were felt in the United States. However, ZMEC contends that the FSIA expropriation exception applies.

 The expropriation exception provides that a foreign sovereign is not immune from suit in any case

> in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States.

28 U.S.C. § 1605(a)(3). Thus, in order to establish jurisdiction pursuant to the FSIA expropriation exception, a plaintiff must show that: (1) rights in property are in issue; (2) that the property was "taken"; (3) that the taking was in violation of international law; and (4) that one of the two nexus requirements is satisfied. The

district court found that ZMEC failed to satisfy the first two criteria because intangible contract rights are not rights in property and there was no governmental taking. We need not determine whether intangible contract rights are property under the statute, however, because defendants-appellees' actions did not constitute a taking within the meaning of the FSIA.

 The FSIA does not define the term "taken." However, the legislative history makes clear·that the phrase "taken in violation of international law" refers to "the nationalization or expropriation of property without payment of the prompt adequate and effective compensation required by international law," including "takings which are arbitrary or discriminatory in nature." H.R.Rep. No. 94–1487, at 19 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6618. The term "taken" thus clearly refers to acts of a sovereign, not a private enterprise, that deprive a plaintiff of property without adequate compensation. *Accord Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682, 685, 96 S.Ct. 1854, 1857, 48 L.Ed.2d 301 (1976).

 ZMEC argues that ECB and ADCB were alter egos of the Emirate, which surreptitiously expropriated ZMEC's property under the 1983 Agreement. However, government instrumentalities are presumed to be distinct and independent from their sovereign and normally are treated as such. *See First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 626–27, 103 S.Ct. 2591, 2600, 77 L.Ed.2d 46 (1983). As the Supreme Court has explained,

> [f]reely ignoring the separate status of government instrumentalities would result in substantial uncertainty over whether an instrumentality's assets would be diverted to satisfy a claim against the sovereign, and might thereby cause third parties to hesitate before extending credit to a government instrumentality. As a result, the efforts of sovereign nations to structure their governmental activities in a manner deemed

necessary to promote economic development and efficient administration would surely be frustrated.

*Id.* at 626, 103 S.Ct. at 2600.

While the presumption of separateness is a strong one, it may be overcome if a corporate entity is so extensively controlled by the sovereign that the latter is effectively the agent of the former, or if recognizing the corporate entity as independent would work a fraud or injustice. *See id.* at 629–630, 103 S.Ct. at 2601–02; *De Letelier v. Republic of Chile,* 748 F.2d 790, 794–95 (2d Cir.1984).

ZMEC bears the burden of proving that the corporate entity should not be presumed distinct from a sovereign or sovereign entity. *See id.* at 795. ZMEC challenges ECB's and ADCB's status as separate corporate entities on the following evidence: the Emirate forced ZMEC into debt by withholding required contract payments, which in turn lead ZMEC to take out a loan from ECB; ECB officials threatened to disavow ZMEC's checks, which could have led to Mr. Zappia's imprisonment; ECB seized Mr. Zappia's passport and submitted it to a government official who withheld it for months; the 1983 Agreement included a provision that prevented ZMEC from incurring additional debt which effectively acted as an "embargo"; after the 1983 Agreement was executed, ECB sought Sheikh Khalifa's approval of an extension of time in which to complete the construction of government buildings; and after entering into the 1983 Agreement, ECB rushed to complete the construction projects increasing ZMEC's debt exposure.

This evidence does not demonstrate a sufficient intermingling of the private bank with the sovereign to overcome the presumption of separateness. There is no evidence that Abu Dhabi or ADIA ignored ECB's separate status, or that the sovereign so abused the corporate form that considerations of fair dealing require that we disregard the presumption of separateness. The facts merely show that the government, acting as a commercial entity,

reneged on its contractual obligations. ZMEC then turned to a private commercial bank, ECB, for a loan. When it could not meet its loan obligations, ECB levied on the only available security interest— ZMEC. After ECB merged into ADCB in 1985, ADCB merely acted pursuant to the agreement its predecessor had negotiated. The acts of a private commercial entity, even one that supports a government, cannot be attributed to a government that has not authorized the private entity to act on its behalf. *Accord Short v. Islamic Republic of Iran,* 16 Iran–U.S. Cl. Trib. Rep. 76, 84–85 (1987). The strong presumption of separateness cannot be overcome on the facts of this case.

ZMEC also asserts that the acts of Abu Dhabi and ADIA alone are sufficient to serve as a basis for jurisdiction under the FSIA expropriation exception. Specifically, ZMEC relies on Abu Dhabi's refusal to pay ZMEC under the construction contracts and ADIA chairman Sheikh Khalifa's ex post facto approval of the 1983 Agreement as a basis for subject matter jurisdiction. Tellingly, ZMEC does not cite any law in support of that proposition. Abu Dhabi's alleged refusal to pay ZMEC under the construction contracts no doubt supports a commercial breach of contract claim. However, breach of a commercial contract alone does not constitute a taking pursuant to international law. *See First Fidelity Bank, N.A. v. Government of Antigua & Barbuda–Permanent Mission,* 877 F.2d 189, 193 (2d Cir.1989). Moreover, the government did not seize control of ZMEC. ECB transferred the management of ZMEC to a management team that consisted solely of private actors and included Mr. Zappia. As for ADIA, it was not even a party to any of the contracts at issue in this action. Although Sheikh Khalifa was the chairman of ADIA, his ex post facto approval of the 1983 Agreement alone is not sufficient to establish jurisdiction over ADIA.

Accordingly, the district court did not err in dismissing the complaint for lack of jurisdiction.

II. *Denial of Hearing*

The district court's denial of an evidentiary hearing is subject to an abuse of discretion standard of review. *See First City, Texas–Houston, N.A. v. Rafidain Bank,* 150 F.3d 172, 175 (2d Cir.1998). ZMEC argues that Mr. Zappia's uncorroborated averments that Abu Dhabi and ADIA controlled the bank created a material issue of fact that could only be resolved in an evidentiary hearing, and that the district court abused its discretion in not conducting one.

On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing. *See Cargill Int'l,* 991 F.2d at 1019. Here, the magistrate judge afforded the parties two years of discovery solely on the jurisdictional issue. Upon reviewing the record amassed over the two years, the courts below both concluded that there was no evidence that the Emirate was controlling ECB and was responsible for ZMEC's losses. To the contrary, the evidence established that ECB and ADCB were not alter egos of the sovereign. The conclusory allegations in Mr. Zappia's affidavit are not sufficient to create a material issue of fact. *See Kamen v. American Tel. & Tel. Co.,* 791 F.2d 1006, 1011 (2d Cir.1986); *Exchange Nat'l Bank v. Touche Ross & Co.,* 544 F.2d 1126, 1131 (2d Cir.1976) (on 12(b)(1) motion to dismiss, party cannot rest on conclusory allegations that factual disputes exist). Accordingly, we hold that the district court did not abuse its discretion in declining to conduct an evidentiary hearing.

*CONCLUSION*

The order of the district court is affirmed.