Crystal McFARLANE, et al, Plaintiffs,

v.

Jan ROBERTA, et al, Defendants.

Civil Action No. 3:11–CV–00878 (JCH).

United States District Court,
D. Connecticut.

Aug. 30, 2012.

Crystal McFarlane, Norwich, CT, pro se.

Carolyn Signorelli, Attorney General's Office, Hartford, CT, for Defendants.

## RULING ON DEFENDANTS' MOTION TO DISMISS COMPLAINT (DOC. NO. 21) AND DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT (DOC. NO. 29)

JANET C. HALL, District Judge.

### I. INTRODUCTION

Pro se plaintiffs Crystal McFarlane and her minor children, S.M., J.M., and N.H. (together "Ms. McFarlane") bring this action against the State of Connecticut Department of Children and Families ("DCF") and DCF social workers Jan Roberta and Karen Balzener (the "Social Workers") for a variety of federal and state claims chiefly arising out of the events leading up to and including the removal of Ms. McFarlane's children from her home for placement in protective custody. Ms. McFarlane alleges that DCF and the Social Workers engaged in racial discrimination against Ms. McFarlane in violation of 42 U.S.C. § 1981, deprived Ms. McFarlane of her constitutional rights in violation of 42 U.S.C. § 1983, conspired to interfere with Ms. McFarlane's civil rights in violation of 42 U.S.C. § 1985, injured Ms. McFarlane by tampering with Ms. McFarlane's mailbox and stealing her mail in violation of 18 U.S.C. § 1708, and violated the protections of the Privacy Act, 5 U.S.C. § 552. Ms. McFarlane further alleges a variety of state law claims, including intentional infliction of emotional distress, negligent infliction of emotional distress, harassment, economic abuse, violation of privacy and defamation. DCF and the Social Workers filed a Motion to Dismiss Ms. McFarlane's Amended Complaint ("Mot. Dismiss Am. Compl.") (Doc. No. 29) for lack of jurisdiction and for failure to state a claim upon which relief may be granted. For the reasons stated below, the Motion is granted.

DCF and the Social Workers had earlier filed a Motion to Dismiss Ms. McFarlane's original complaint ("Mot. Dismiss") (Doc. No. 21) on April 23, 2012. The court had not yet ruled on this Motion when Ms. McFarlane filed a Motion to Amend her Complaint ("Mot. Amend") (Doc. No. 27). This court granted Ms. McFarlane's Motion to Amend (Doc. No. 28). DCF and the Social Workers again filed a Motion to Dismiss the Amended Complaint (Doc. No. 29).

Ms. McFarlane was somewhat unclear as to what elements of her original Complaint are actually preserved in her Amended Complaint. However, Ms. McFarlane seems to indicate that the document she filed on May 15, 2012 is intended to serve as both the Motion to Amend and the entirety of the Amended Complaint. *See* Mot. Amend at 1 ("The Plaintiff in the above entitled matter respectfully request [sic] the court allow the Amendment to the Complaint filed on June 1, 2011 and Amended on May 12, 2012 for the reasons states [sic] in this Amended Complaint."). The court therefore terminates as moot DCF and the Social Worker's first Motion to Dismiss as it relates to a complaint that has been superseded.

### II. FACTUAL BACKGROUND

#### A. *Claim 1*

Ms. McFarlane's Amended Complaint describes a series of events related to vari-

ous DCF actions related to the decision to remove Ms. McFarlane's children from her custody. This factual narrative is styled as a series of "claims" apparently intended to convey particular causes of action. These claims appear to describe a series of discrete events, although they are not presented in chronological order. For the sake of consistency, this court will refer to the claims in the order they appear in the Amended Complaint, although they did not appear to take place in sequential order.

Ms. McFarlane, in Claim 1, describes the removal of Ms. McFarlane's children by DCF and the Social Workers. This event apparently took place on June 21, 2010, although the Amended Complaint is not entirely clear on this point. According to Ms. McFarlane, on the date of the removal, the Social Workers arrived at Ms. McFarlane's home accompanied by two police officers. Ms. McFarlane alleges that Ms. Balzner ran through Ms. McFarlane's doorway and grabbed Ms. McFarlane's son and daughter. Ms. Balzner told Ms. McFarlane the children were supposed to be with the children's father. Ms. McFarlane alleges that Ms. Roberta attempted to put Ms. McFarlane's son in a car seat that was too small for him, hurting him in the process. At some point during the events, one of the social workers gave Ms. McFarlane a paper, but Ms. McFarlane later realized that this paper was not a warrant or a court order.[1] These actions allegedly caused Ms. McFarlane to experience intimidation and anxiety. Further, Ms. McFarlane alleges that DCF placed Ms. McFarlane on a registry of neglectful and abusive individuals maintained by DCF, which prevented Ms. McFarlane from retaining employment. Ms. McFarlane also maintains that, in the course of the removal process, DCF and Ms. Roberta disclosed Ms. McFarlane's personal information without her consent.

### B. Claim 2

Claim 2 accounts for some of the events that Mc. McFarlane alleges precipitated the removal process described in Claim 1. Ms. McFarlane alleges that in October, 2009, she mistakenly allowed her heating oil to run out, leading to a loss of hot water in her home. Ms. McFarlane then placed her children with a friend, and with her older son, Malik. Ms. McFarlane claims that notes left for Ms. McFarlane on her house were taken in by Malik and not given to Ms. McFarlane, so she was unaware of the nature and purpose of the June, 21, 2010 visit from DCF officials. At some point, either before or during the removal, DCF officials spoke with Ms. McFarlane's youngest daughter, allegedly without prior consent or a court order.

Also at an earlier point, during the Social Workers' first in-home visit to Ms. McFarlane's home, Ms. Roberta allegedly said to Ms. McFarlane, "So you are the black sheep of the family." Ms. McFarlane alleges this comment was one of a series of degrading comments made by Ms. Roberta, including, "You will not get your children back," and "Your son, [J] does not miss you and doesn't want to see you."

Ms. McFarlane alleges that involvement of DCF was precipitated in part by anonymous phone calls made by family members who said that Ms. McFarlane was a drug user and a prostitute. Ms. McFarlane alleges these actions were precipitated by the ending of a personal relationship with a man identified as Steve Hyppolite.

---

1. Although not stated in the Amended Complaint, the paper handed to Ms. McFarlane appears to have been an Immediate Removal/96 Hour Hold notification from DCF. *See* Complaint at 8.

Ms. McFarlane further alleges that Ms. Roberta is actually Ms. McFarlane's neighbor, residing two homes away. Ms. McFarlane alleges that, outside of work hours, Ms. Roberta watches Ms. McFarlane's house and looked in Ms. McFarlane's windows.

Ms. McFarlane also alleges that a "Visitation Contractor" in charge of supervising Ms. McFarlane's visits with her children dramatically reduced the amount of time Ms. McFarlane is allowed to spend with her children, from four days to one, without valid cause.

### C. Claim 3

Ms. McFarlane alleges that, between June 2011 and February 2012, Ms. Roberta (who was Ms. McFarlane's neighbor) repeatedly searched through Ms. McFarlane's mailbox and occasionally took some of Ms. McFarlane's mail. Ms. McFarlane also alleges that, because Ms. Roberta was a neighbor, she purposely chose to visit Ms. McFarlane's home at times when Ms. McFarlane would not be home.

On October 14, 2011,[2] Ms. McFarlane went to the police station in Norwich, Connecticut to make a complaint about Ms. Roberta's actions. The responding police officer told Ms. McFarlane that he had spoken to Ms. Roberta and given her a warning and that further such actions would lead to arrest. Ms. McFarlane alleges this conduct has made her nervous and has caused her difficulty sleeping.

### D. Claim 4

Ms. McFarlane alleges that the events surrounding and following the removal of her children by DCF has caused her excessive weight loss, humiliation, and have made her prone to nervous breakdowns. Ms. McFarlane alleges that her children suffer separation anxiety from her as a result.

### E. State Juvenile Court Orders

Though alluded to in her Amended Complaint, the Connecticut state court actions concerning disposition of her children's cases are not explained in the Amended Complaint. The court, however, may take judicial notice of matters of public record, and the court does so regarding Adjudicatory/Dispositional Orders from the State of Connecticut Superior Court for Juvenile Matters relating to Ms. McFarlane and her children. See Shuttlesworth v. City of Birmingham, 394 U.S. 147, 157, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969). On July 1, 2010, the state court found three of Ms. McFarlane's children to have been neglected by her, and found that out-of-home placement was in the best interests of the children. The children apparently remain outside of Ms. McFarlane's custody.

In her Amended Complaint, Ms. McFarlane has removed a previous claim for $15 million in damages for the emotional distress suffered as a result of the actions surrounding the removal of her children. Instead, Ms. McFarlane asks for injunctive relief in the form of an order by this court overturning orders from the state juvenile court governing custody of her children and returning the children to her care. Ms. McFarlane also seeks injunctive relief in the form of an order to the Social Workers to return Ms. McFarlane's mail.

## III. PRO SE PLEADINGS

■■■ A trial court should hold the pleadings of pro se plaintiffs to a less

---

**2.** Ms. McFarlane's Amended Complaint places this date at October 14, 2012. However, as that date has not yet occurred, the court assumes Ms. McFarlane intended the date October 14, 2011, as that fits within Ms. McFarlane's earlier-stated timeframe of June 2011 to February 2012.

stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). The court's liberal interpretation, however, must never become advocacy of position as the court cannot act as counsel for the plaintiffs. *Garrett v. Selby Connor Maddux & Janer,* 425 F.3d 836, 841 (10th Cir.2005). Dismissal is usually reserved for cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised. *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988). The court should interpret Ms. McFarlane's pro se Amended Complaint liberally in ruling on the defendants' Rule 12(b)(6) and Rule 12(b)(1) motion to dismiss. *See Haines,* 404 U.S. at 520–21, 92 S.Ct. 594.

## IV. SUBJECT MATTER JURISDICTION AND STANDING

DCF and the Social Workers assert this court lacks subject matter jurisdiction to consider Ms. McFarlane's Amended Complaint because Ms. McFarlane's requested relief is barred by the *Rooker–Feldman* Doctrine. DCF and the Social Workers further assert that Ms. McFarlane lacks standing to bring claims on behalf of her minor children or claims related to the unconstitutional seizure of her children.

### A. *Rooker–Feldman*

In Ms. McFarlane's Amended Complaint, she apparently seeks only injunctive relief in the form of an order overturning state court orders removing Ms. McFarlane's custody over her children, returning the children to her, and ordering return of her stolen mail. To the extent that Ms. McFarlane's claims are premised on overturning a state court order, DCF and the Social Workers assert that such claims are barred by the *Rooker–Feldman* Doctrine.

■ *Rooker–Feldman* is a limited doctrine aimed at preventing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 283–4, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). The Second Circuit has adopted a four-part test for determining whether *Rooker–Feldman* strips jurisdiction:

> *Rooker–Feldman* directs federal courts to abstain from considering claims when four requirements are met: (1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced.

*McKithen v. Brown,* 626 F.3d 143, 154 (2d Cir.2010). DCF and the Social Workers contend that, because Ms. McFarlane is seeking only a reversal of the state juvenile court judgment, she falls well within the bounds of *Rooker–Feldman. See* Defendant's Memorandum of Law in Support of Motion to Dismiss Amended Complaint ("Memo. Supp. Mot. Dismiss Am. Compl.") (Doc. No. 29–1) at 7–10.

DCF and the Social workers argue that, "By expressly requesting that the Federal Court 'overturn the existing State Juvenile Court Order,' McFarlane has rendered the state court order 'the source of her injury,' thus her action is barred by the Rooker–Feldman Doctrine." *Id.* at 8 (quoting Amended Complaint at 10; *Chee v. State of Hawaii,* No. 08–CV–11416, 2008 WL 4185943, *6 (E.D.Mi.2008)). In support, DCF and the Social Workers cite *Chee v. State of Hawaii,* in which the plaintiff sought to overturn a Hawaii state court

custody decision and the court, citing, in part, *Rooker–Feldman,* dismissed the claim. *Chee,* 2008 WL 4185943 at *6.

■ Here, while it does appear that Ms. McFarlane seeks, as a *remedy,* the overturning of a state court judgment, it is far less clear that the source of Ms. McFarlane's alleged *injury* is entirely predicated on the judgment of the state court. In *Chee,* by comparison, the plaintiff claimed key witnesses misrepresented events that underlay the state court judgment itself. *Id.* ("[T]his action appears to be an attempt by Chee to litigate in this Court the Hawaii Family Court decisions with which she disagrees."). Instead, Ms. McFarlane alleges an array of injuries stemming from the actions of DCF and the Social Workers stemming from, *inter alia,* the unconstitutional manner in which children were removed from Ms. McFarlane's home or the manner in which investigations were carried out.

Ms. McFarlane's Amended Complaint is not, unfortunately, a model of clarity, and at times Ms. McFarlane does appear to allege injuries that stem from little more than the state court judgment itself. *See* Amended Complaint at 8 ("I cry for how they removed my children and prevented me from retaining employment."). However, given Ms. McFarlane's pro se status, the court sees no need to draw from these statements *Rooker–Feldman's* complete jurisdictional bar. Construing Ms. McFarlane's pro se Amended Complaint liberally, this court does not find Ms. McFarlane's claims, to the extent that they allege injuries other than those stemming from the state court judgment itself, as barred by *Rooker–Feldman.*

However, the court does note that it is far less clear that it could possibly have the power to overturn a state court order based on alleged constitutional violations not stemming from the judgment itself.

While the court acknowledges that Ms. McFarlane appears to have eliminated her money damages claims in her Amended Complaint, the court, again, construing that Amended Complaint liberally, will consider the remainder of her claims on the merits as though she preserved them in their original form, which Ms. McFarlane may have intended to do.

### B. *Standing*

Before turning to the merits of Ms. McFarlane's claims, however, the court must address DCF and the Social Workers' contention that Ms. McFarlane lacks standing to bring claims on behalf of her children.

#### 1. Standing as a Rule 12(b)(1) Motion

■ A motion to dismiss for lack of standing is properly brought pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, because standing is a federal jurisdictional question. *Carver v. City of New York,* 621 F.3d 221, 225 (2d Cir.2010); *Ballentine v. United States,* 486 F.3d 806, 810 (3d Cir.2007). A plaintiff must allege clear facts demonstrating that they are the proper party to invoke judicial resolution of the dispute. *Warth v. Seldin,* 422 U.S. 490, 518, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Courts evaluating Rule 12(b)(1) motions "may resolve [ ] disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits." *Zappia Middle East Constr. Co. Ltd. v. Emirate of Abu Dhabi,* 215 F.3d 247, 253 (2d Cir.2000).

#### 2. Standing for a Non-custodial, Pro Se Parent

The following representatives may sue on behalf of a minor: (A) a general guardian; (B) a committee; (C) a conservator; or (D) a like fiduciary. Fed.R.Civ.P. 17(c)(1). A minor that does not have a

representative may sue by next friend or by a guardian ad litem. Fed.R.Civ.P. 17(c)(2). The court must appoint a guardian ad litem, or issue another appropriate order, to protect a minor or incompetent person who is unrepresented in an action. *Id.* The interests of non-custodial parents suspected of child abuse are not necessarily aligned with the interests of their minor children. *See Kia P. v. McIntyre,* 235 F.3d 749, 758 (2d Cir.2000); *see also Caetano v. Santa Clara County,* 2002 WL 1677723 (N.D.Cal.2002) (ruling that a plaintiff lacking physical or legal custody of his children would not be an appropriate guardian ad litem).

In her Amended Complaint, Ms. McFarlane asks, to some extent, for relief for her children's rights. Amended Complaint at 5, 8. Ms. McFarlane does not state whether she is the legal guardian of her children. Ms. McFarlane does, however, give indications, in the present tense, that she does not have custody of her children. *Id.* at 8. For example, Ms. McFarlane states the following regarding her children: "This is the longest time we have been away from each other." *Id.* at 8.

DCF and the Social Workers challenge Ms. McFarlane's standing with respect to her children's claims. *See* Memo. Supp. Mot. Dismiss Am. Compl. at 10–11. The court may consider the defendants' attached exhibits (Doc. 29–4) at 1–6, in determining a Rule 12(b)(1) jurisdictional dispute. *See Zappia,* 215 F.3d at 253. The attached exhibits include the Adjudicatory/Dispositional Orders for Ms. McFarlane's children S.[3], J.[4], and N.[5]. The Orders indicate that the State of Connecticut Superior Court committed each child, until further court order, "to the Commissioner of Children and Families who shall be the guardian of said child/youth according to the statutes in such cases," with commitment being effective July 1, 2010. The attached exhibits confirm that Ms. McFarlane was not her children's guardian at the time of filing either of her complaints, a timeline that conforms with the narrative outlined in Ms. McFarlane's Amended Complaint.

■ Ms. McFarlane does not allege clear facts that establish that she is the proper party to invoke a judicial resolution of her children's rights. *See Warth,* 422 U.S. at 518, 95 S.Ct. 2197. Furthermore, DCF's child abuse investigation against Ms. McFarlane and Ms. McFarlane's lack of guardianship is probative that her interests are not aligned with her children's interests. Therefore, Ms. McFarlane lacks standing, and the court dismisses Ms. McFarlane's claims asserted on behalf of her children.

### 3. Standing for a Pro Se Parent

■ A non-attorney parent must be represented by counsel in order to bring an action on behalf of their child. *Cheung v. Youth Orchestra Found., Inc.,* 906 F.2d 59, 61 (2d Cir.1990). Furthermore, the choice to appear pro se is not a true choice for minors who under state law, cannot determine their own legal actions. *Id.* Minors are entitled to trained legal assistance to fully protect their rights. *Id.* To allow a guardian to bring pro se litigation on behalf of their children would invite abuse. *Id.*

■ Here, Ms. McFarlane filed this Amended Complaint as a pro se plaintiff.

---

**3.** State of Connecticut Superior Court for Juvenile Matters, No. K09CP10012335A.

**4.** State of Connecticut Superior Court for Juvenile Matters, No. K09CP10012336A.

**5.** State of Connecticut Superior Court for Juvenile Matters, No. K09CP10012337A.

Furthermore, Ms. McFarlane did not indicate that she is an attorney or that she is trained to provide legal assistance. Therefore, even if Ms. McFarlane does have guardianship of her children, she does not have standing to bring any claims on behalf of her minor children absent legal representation. Accordingly, the children's lack of legal representation is an independent ground to dismiss Ms. McFarlane's claims on behalf of her children.

#### 4. Standing for Fourth Amendment Seizure of Children.

 The state's custodial taking of a minor child is a seizure under the Fourth Amendment. *P.C. v. Connecticut Department of Children and Families*, 662 F.Supp.2d 218, 232 (D.Conn.2009) (citing *Tenenbaum v. Williams*, 862 F.Supp. 962, 974 (E.D.N.Y.1994) aff'd in part and vacated in part, 193 F.3d 581 (2d Cir.1999)). A parent, however, does not suffer a violation of their Fourth Amendment rights when their child is subject to a seizure. *See P.C.*, 662 F.Supp.2d at 232.

Ms. McFarlane's children's Fourth Amendment rights belong to Ms. McFarlane's children and not to Ms. McFarlane herself. *Id.* Because Ms. McFarlane does not have standing to sue on behalf of her children, the court dismisses Ms. McFarlane's Fourth Amendment claims regarding the search and seizure of her children. Ms. McFarlane, however, has standing with regard to her Fourth Amendment claim that the social workers illegally entered her home without a warrant or probable cause.

#### C. *Sovereign Immunity for Federal Claims*

Ms. McFarlane, so far as this court can discern, has asserted federal claims based on five statutes: 42 U.S.C. § 1981 for ra-cial discrimination, 42 U.S.C. § 1983 for violation of her Fourth Amendment rights preventing unreasonable search and seizure, 42 U.S.C. § 1985 for civil rights violations and discrimination, 18 U.S.C. § 1708, for theft of her mail (as to Ms. Roberta), and 5 U.S.C. § 552 for violation of the Privacy Act. These claims appear to apply to defendants in their official and individual capacities.

 The absence of the sovereign's consent to suit constitutes a jurisdictional defect. *FDIC v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). Suits claiming violations of federal law against states and their officials that seek damages for past injuries are firmly foreclosed by the Eleventh Amendment. *Ward v. Thomas*, 207 F.3d 114, 119 (2d Cir.2000). Suits for prospective relief, however, are not barred, *id.*, and Eleventh Amendment immunity does not extend to a suit against a state official in their individual capacity, even when the conduct complained of was carried out in accordance with state law. *Ford v. Reynolds*, 316 F.3d 351, 356 (2d Cir.2003).

 In Ms. McFarlane's original Complaint, she requested $15,000,000 in relief for past injuries allegedly caused by defendants. Complaint at 12. In their original Motion to Dismiss, the defendants raised the sovereign immunity defense against the court's jurisdiction, Mem. in Supp. at 9–10. To the extent that Ms. McFarlane intended to preserve her claims for money damages, therefore, the court dismisses Ms. McFarlane's federal claims for monetary damages against DCF, and the social workers in their official capacities. *See Ward*, 207 F.3d at 119.

### V. FAILURE TO STATE A CLAIM 12(B)(6)

The Social Workers also assert that Ms. McFarlane's allegations against them in

their individual capacities based on violations of federal law fail to properly state a claim against them.

### A. *18 U.S.C. § 1708*

■■■■ In Ms. McFarlane's Amended Complaint, she has added a claim against Ms. Roberta for violation of section 1708 of title 18 of the United States Code for stealing and tampering with her mail. This provision, however, is a criminal statute, and it does not appear that Congress intended to create a private, civil cause of action based on its violation. *See Manning v. Haggerty*, No. 3:11–CV–302, 2011 WL 4527818, *3 ("[N]o law supports a private cause of action based on these provisions of the criminal code."); *Jackson v. Village of Bellwood*, No. 91–c–7809, 1992 WL 45004, *4 (N.D.Ill.1992) (dismissing civil claim based on section 1708 because the penal statute did not give rise to a private, civil cause of action); *Sciolino v. Marine Midland Bank–W.*, 463 F.Supp. 128, 130–31 (W.D.N.Y.1979) ("A civil claim arising out of an alleged violation of penal statutes relating to the mails i.e., 18 U.S.C. § ... 1708 ... is not the type of action envisioned" under 28 U.S.C. § 1339, granting district courts original jurisdiction over acts of Congress relating to the Postal Service).

Ms. McFarlane's claim based on 18 U.S.C. § 1708 is therefore dismissed.

### B. *42 U.S.C. § 1981*

The Social Workers further contend that Ms. McFarlane's fails to assert factual allegations sufficient to survive dismissal of the claims brought under section 1981 of title 42 of the United States Code.

■■■■ "Section 1981 provides a remedy against private actors who intentionally discriminate on the basis of race or ethnicity." *Wong v. Mangone*, 450 Fed.Appx. 27, 30 (2d Cir.2011). A section 1981 claim has three elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the statutorily enumerated activities. *Id.* (citing *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir.1993)). The enumerated activities include the rights to "make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property." 42 U.S.C. § 1981(a).

■■■■ Ms. McFarlane does not directly allege her status as a racial minority, although such status is to some degree implied by her claims. More problematic for Ms. McFarlane is the complete absence of factual allegations relating to an intent to discriminate on the basis of race by any of the defendants. In the only potentially racially-based statement Ms. McFarlane alleges, Ms. Roberta stated to Ms. McFarlane: "So you are the black sheep of the family." *See* Amended Complaint at 5. Leaving aside the fact that this statement—a relatively common idiom—is not notably racial in nature,[6] this statement alone does not approach a sufficiently plausible allegation of intent to discriminate on the basis of race by Ms. Roberta. Ms. McFarlane's claims under 42 U.S.C. § 1981 are therefore dismissed for failure to state a claim.

### C. *42 U.S.C. § 1985*

■■■■ Similarly, Ms. McFarlane fails to state a claim under 42 U.S.C. § 1985. "To

---

**6.** Merriam Webster defines "black sheep" as "a disfavored or disreputable member of a group." Merriam–Webster Online Dictionary.2012.http://www.merriam-webster.com/dictionary/black%20sheep (20 June 2012).

make out a claim under [section] 1985, a plaintiff must allege a conspiracy 'motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" *Harrison v. Lutheran Med. Ctr.,* 468 Fed.Appx. 33, 37 (2d Cir.2012) (quoting *United Bd. of Carpenters & Joiners v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983)). As stated above, even construing Ms. McFarlane's Amended Complaint liberally, Ms. McFarlane fails to make such allegations. Her claim under section 1985 is therefore dismissed.

### D. *5 U.S.C. § 552*

■ In Ms. McFarlane's Amended Complaint, she makes references to a claim for breach of her rights to confidentiality "under the privacy act." *See* Amended Complaint at 4. Construing this claim liberally, this court treats this allegation as a claim for a violation of section 552 of title 5 of the United States Code, the Privacy Act. However, section 552 applies only to federal agencies, not to state agencies or state officials. *See Pennyfeather v. Tessler,* 431 F.3d 54, 56 (2d Cir.2005) ("Under FOIA—and accordingly, under the Privacy Act as well—there is no private right of action against an official or employee of a municipal or state, rather than a federal, agency.") (internal quotations omitted).

Because DCF is a Connecticut state agency, and the Social Workers are employees of that state agency, Ms. McFarlane can state no federal claim against them for violations of the Privacy Act. Accordingly, those claims are dismissed.

### E. *42 U.S.C. § 1983*

■ Ms. McFarlane's final federal claims are brought under section 1983. Ms. McFarlane appears to ground her section 1983 claims on three distinct constitutional provisions: (1) violation of a Fourth Amendment right against unreasonable searches and seizures during the removal of Ms. McFarlane's children; (2) violation of a Fourteenth Amendment right to due process concerning the process by which DCF removed Ms. McFarlane's children; and (3) violation of a Fourteenth Amendment right against "economic abuse" by listing Ms. McFarlane's name on a child protective registry. "To state a claim under § 1983, a plaintiff must allege (1) the deprivation of a right secured by the Constitution or laws of the United states (2) which has taken place under color of state law." *Rodriguez v. Weprin,* 116 F.3d 62, 65 (2d Cir.1997).

#### 1. Fourth Amendment Claims

■ The Fourth Amendment protects citizens from unreasonable searches and seizures. *Tenenbaum,* 193 F.3d at 602. "[P]robable cause is descriptive of what seizures are reasonable when ... no warrant has been obtained." *Id.* at 602–03. Subsection 17a–101g(e) of the Connecticut General Statutes States the following:

"If the Commissioner of Children and Families, or the commissioner's designee, has probable cause to believe that the child or any other child in the household is in imminent risk of physical harm from the child's surroundings and that immediate removal from such surroundings is necessary to ensure the child's safety, the commissioner, or the commissioner's designee, shall authorize any employee of [DCF] or any law enforcement officer to remove the child and any other child similarly situated from such surroundings without the consent of the child's parent or guardian."

Conn. Gen.Stat. § 17a–101g(e).

Ms. McFarlane claims that her Fourth Amendment rights were violated on June 21, 2010, when the social workers entered into her home and seized her children

pursuant to a "paper" [7] (Immediate Removal/96 Hour Hold ("96 Hour Hold"):

"I felt intimidated as if the Plaintiff, Crystal McFarlane had no choice but to comply with the [social] workers by bringing the two police officers to my home. As I was reading over the form with my mother, I realized that the paper was not a warrant or a signed court order. Later I spoke with an attorney and he advised me that the social workers had no legal right to remove my children."

Amended Complaint at 3. Ms. McFarlane's further asserts that the social workers entered her house, but she does not describe with any detail the manner in which the defendants entered or how their entry was unreasonable.

■ Ms. McFarlane's Amended Complaint does not plausibly support a Fourth Amendment claim that the social workers violated her right against unreasonable search and seizure, other than to assert, without support, that "Jan Roberta and Karen Balzener failed to investigate a reasonable cause" supporting the 96 Hour Hold order. *Id.* at 5. Furthermore, Ms. McFarlane acknowledges, but denies, a claim that her two youngest children were in immediate danger of harm. *Id.* at 4. Ms. McFarlane's Amended Complaint provides facts that support the conclusion that the social workers' actions were reasonable, including the following: Ms. McFarlane stated that "it looked bad" that she did not tell DCF that she did not have hot water in her house or that her three children were not staying at her house, *id.;* Ms. McFarlane's family members had made anonymous phone calls claiming that Ms. McFarlane was a drug user and prostitute, *id.* at 6; and, DCF had been at-

tempting to contact Ms. McFarlane, but she had not responded. *Id.* at 5.

Ms. McFarlane's Amended Complaint lacks plausible, factual allegations that the employee defendants unreasonably entered Ms. McFarlane's house. Furthermore, the Amended Complaint does not sufficiently allege that the social workers unreasonably believed that probable cause existed to support their actions. *See P.C.,* 662 F.Supp.2d at 233. Accordingly, the court determines that Ms. McFarlane failed to state a claim under section 1983 for violation of her Fourth Amendment rights against unreasonable search and seizure.

### b. Due Process Claims

#### i. Removal of Ms. McFarlane's Children

■ Ms. McFarlane also claims that the defendants violated her Fourteenth Amendment due process rights. Amended Complaint at 5. Ms. McFarlane states, simply, that the Social Workers "failed to investigate a reasonable cause." Throughout the Amended Complaint, however, Ms. McFarlane references the DCF investigation against her and the procedures under which the investigation proceeded and her means of response. Ms. McFarlane asserts that DCF unsuccessfully attempted to contact her on multiple occasions, *id.* at 5; that an Immediate 96 Hour Hold form was presented to her prior to the seizure of her children, *id.* at 3; and that DCF provided her with visitation sessions with her children, *id.* at 6. Although Ms. McFarlane's custodial rights of her children are a protected liberty interest, Ms. McFarlane does not present any argument or allegations that suggest that the procedures in place by the State of Connecticut to protect these rights were insufficient.

---

**7.** As stated *supra* at n. 1, this "paper" appears to be an official Immediate Removal/96 Hour Hold.

Accordingly, the court dismisses Ms. McFarlane's due process claim, because her conclusory allegation of a due process violation fails to set forth a plausible claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

### ii. Listing of Ms. McFarlane on Child Protective Registry

Ms. McFarlane also claims that DCF placed Ms. McFarlane "on a child protective registry for neglect and abuse which has prohibited me from retaining employment, which a [sic] form of economic abuse." Am. Compl. at 3. Though all claims against DCF have already been dismissed, to the extent that Ms. McFarlane is alleging this claim against the Social Workers in their individual capacities (something this court doubts Ms. McFarlane can do, as she does not allege the Social Workers were involved in the decision to register Ms. McFarlane's name), this court examines her claim.

 The court construes Ms. McFarlane's claim as a violation of her Fourteenth Amendment rights to procedural due process for the deprivation of a liberty interest. This circuit has recognized claims based on similar assertions of a liberty interest in such official actions that may affect an individual's reputation:

> [T]o state such a claim a plaintiff must allege a "stigma," which is "the utterance of a statement about [him] that is injurious to [his] reputation, that is capable of being proved false, and that he ... claims is false," and a "plus," which is "some tangible and material state-imposed burden in addition to the stigmatizing statement." *Velez v. Levy*, 401 F.3d 75, 87 (2d Cir.2005) (internal quotation marks and alterations omitted). "[T]he 'plus' imposed by the defendant must be a specific and adverse action clearly restricting the plaintiff's liber-

ty—for example, the loss of employment, or the termination or alteration of some other legal right or status." *Id.* at 87–88 (internal quotation marks and citation omitted). A negative impact on "job prospects, or, for that matter, romantic aspirations, friendships, self-esteem, or any other typical consequence of a bad reputation," is insufficient. *Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir.1994).

*Boss v. Kelly*, 306 Fed.Appx. 649, 651 (2d Cir.2009); *see also Valmonte*, 18 F.3d at 1002 ("We hold that Valmonte has adequately stated a cause of action for deprivation of a liberty interest not merely because of the defamatory aspect of the Central Register, but because that defamation occurs in conjunction with a statutory impediment to employment.").

 However, even assuming that Ms. McFarlane has stated a claim for violation of a protected liberty interest, she has not alleged "that the procedural safeguards of her interest established by the state are insufficient to protect her rights." *Valmonte*, 18 F.3d at 1002. Indeed, her Amended Complaint says nothing at all about the state procedure underlying the decision to formally list her name on the child protective registry. Accordingly, the court dismisses Ms. McFarlane's claim, to the extent she was able to raise it, because her conclusory allegation of a due process violation fails to set forth a plausible claim. *See Iqbal*, 556 U.S. 662, 129 S.Ct. 1937.

## VI. PENDENT STATE LAW CLAIMS

 A district court may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). Although the exercise of pendent jurisdiction is generally a matter for the exercise of a district court's discretion, in the usual case in

which all federal law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state law claims. *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187, 188 (2d Cir.2009).

Ms. McFarlane invoked the court's federal jurisdiction, but pursuant to the defendants' Motion to Dismiss Ms. McFarlane's Amended Complaint, the court dismisses the Ms. McFarlane's federal claims. Without Ms. McFarlane's federal claims, the court would not originally have had jurisdiction over her remaining state law claims of intentional infliction of emotional distress, negligent infliction of emotional distress, harassment, economic abuse, violation of privacy and defamation. Because the court is dismissing all of Ms. McFarlane's federal law claims, the court declines jurisdiction over Ms. McFarlane's remaining state law claims.

## VII. CONCLUSION

For the foregoing reasons, the court terminates as moot defendants' Motion to Dismiss Ms. McFarlane's Complaint (Doc. No. 21) and grants defendants' Motion to Dismiss Ms. McFarlane's Amended Complaint (Doc. No. 29).

Given Ms. McFarlane's *pro se* status, the court grants her leave to file a second amended complaint, no later than September 21, 2012. However, the court will not permit any repleading of claims for injunctive relief from the state court orders removing Ms. McFarlane's custody over her children; for monetary damages against DCF or the Social Workers in their official capacities; for violations of 18 U.S.C.

§ 1708; or for violations of 5 U.S.C. § 552, as those fail as a matter of law.

**SO ORDERED.**