17-3253-cv
Williams v. Nat'l Gallery

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of September, two thousand eighteen.

PRESENT:     BARRINGTON D. PARKER,
             PETER W. HALL,
             RAYMOND J. LOHIER, JR.,

             *Circuit Judges.*

---------------------------------------------------------------------
OLIVER WILLIAMS, MARGARETE GREEN, AND IRIS FILMER,

             *Plaintiffs-Appellants,*

                    v.                                    No. 17-3253-cv

THE NATIONAL GALLERY, LONDON, THE AMERICAN FRIENDS OF THE NATIONAL GALLERY, LONDON, INC., AND THE UNITED KINGDOM,

             *Defendants-Appellees.*

---------------------------------------------------------------------
FOR APPELLANTS:                          DAVID J. ROWLAND, Patricia I. Hartling (*on the brief*), Rowland & Associates, New York, New York, Edward P. Kelly, Merry L. Biggerstaff, Tiajoloff & Kelly LLP, New York, New York.

1

FOR APPELLEES THE NATIONAL
GALLERY, LONDON AND THE
AMERICAN FRIENDS OF THE
NATIONAL GALLERY,
LONDON, INC.:  SARAH ERIKSON ANDRÉ, Nixon Peabody LLP, Los Angeles, California, Thaddeus J. Stauber, Kriston M. Jamberdino (*on the brief*) Nixon Peabody LLP, New York, New York.

FOR APPELLEE THE
UNITED KINGDOM:  DONALD I. BAKER, Lucy S. Clippinger (*on the brief*), Baker & Miller PLLC, Washington, D.C.

Appeal from a judgment of the United States District Court for the Southern District of New York (Caproni, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED.**

The district court granted Defendants-Appellees' motion to dismiss Plaintiffs-Appellants' ("Appellants") First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), concluding that Defendants-Appellees The National Gallery, London (the "National Gallery") and the United Kingdom were immune from suit under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1332, 1391(f), 1441(d) and 1602 – 1611, and that Appellants' claims were barred as untimely and by the doctrine of laches in any event. This appeal followed. We assume the parties' familiarity with the facts, record of prior proceedings, and arguments on appeal, which we reference only as necessary to explain our decision to affirm.

The salient facts, as alleged by Appellants, are as follows: Appellants are the legal heirs and the assignee of the legal heirs of Margarete Moll ("Moll"). Moll was depicted by Henri Matisse in his 1908 painting *Portrait of Greta Moll* ("Painting"). Moll's husband bought the

2

Painting from Matisse and was its owner until his death in 1947, when Moll became the owner of the Painting. Moll then lived in Ally-occupied Berlin and, fearing "the impending division of Berlin," planned to move to Wales to join her daughter. First Am. Comp. ¶ 54. Concerned that the Painting would be looted by allied, and in particular Soviet, troops, Moll entrusted it to a former art student of her husband, who agreed to take the Painting to Switzerland to be deposited for safekeeping. Upon her arrival in Switzerland in 1947, the former student instead sold the Painting and retained all proceeds. Moll had not authorized the sale. The Painting changed hands a number of times and was eventually sold to the National Gallery in 1979. The National Gallery "ignored the red flag that the painting had been transferred in the immediate aftermath of WWII, and the warnings given by the United States government, which were well known to the National Gallery and the British government, to be especially diligent with regard to art transacted at that time and to bring such objects to the attention of the public authorities so that they could be secured and returned to their rightful owners." Id. ¶ 9.

Appellants were prevented from pursuing their claim to the Painting by the British Museums Act of 1963 and the Museums and Galleries Act of 1992 ("Museums Acts"). "[T]he Museums Acts generally prohibit the disposal of objects that are the property of British museums, including the National Gallery." Id. ¶ 11. At an unspecified time, "[Appellants] informed the National Gallery of the theft of the Painting, and the National Gallery refused to return it." Id. ¶ 61. Then, "[a]fter prolonged discussions with the National Gallery, on March 14, 2014, [Appellants] filed a request for the return of the Painting with the Spoliation Advisory Panel (SAP) of the British government's Department for Culture, Media and Sport,

3

an administrative body of the British government tasked with deciding Holocaust era art claims." *Id.* ¶ 63.[1] On March 25, 2015, the SAP decided it did not have jurisdiction over Appellants' claim because it was only tasked with covering the Nazi-era, which ended in 1945 (the Painting was allegedly misappropriated in 1947). Around April 27, 2015, Appellants demanded the return of the Painting from the National Gallery. The National Gallery refused by letter dated September 21, 2015.

"The standard of review applicable to District Court decisions regarding subject matter jurisdiction under the FSIA is clear error for factual findings and *de novo* for legal conclusions." *In re Terrorist Attacks on Sept. 11, 2001*, 538 F.3d 71, 79 (2d Cir. 2008) (internal quotation marks omitted). Under the FSIA "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States," subject to certain exceptions. 28 U.S.C. § 1604. The definition of a "foreign state" includes agencies and instrumentalities of foreign states. 28 U.S.C. § 1603(a). The National Gallery does not contest that it is an instrumentality of Great Britain for purposes of the motion to dismiss.

Appellants argue that the "expropriation exception" to the FSIA applies. Under 28 U.S.C. § 1605(a)(3) a foreign state is not immune from jurisdiction in a case where "a plaintiff [shows] that: (1) rights in property are in issue; (2) that the property was 'taken'; (3) that the

---

[1] Appellants have further explained that they "are, and have been, prevented from claiming the return of the Painting in a British court because under English law the statute of limitations expired six years from the theft of the Painting in or around 1947, and deaccession of the artwork was barred by the [National Gallery and Tate Gallery Act of 1954] and later by the Museums and Galleries Act [of] 1992. In late 2009, the United Kingdom enacted the *Holocaust (Stolen Art) Restitution Act* which, for the first time, opened the possibility for museums to return WW II era stolen art to their former owners provided there was a recommendation to do so by [SAP]. After the SAP rendered its first recommendation based on this new legislation in September 2010, the [Appellants] contacted the National Gallery in February 2011." Appellants' Br. at 8.

4

taking was in violation of international law; and (4) that one of the two nexus requirements is satisfied." *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 251 (2d Cir. 2000). Appellants failed to allege that the Painting was "taken."

This Court has explained that "taken" as used in § 1605(a)(3) "refers to acts of a sovereign, not a private enterprise, that deprive a plaintiff of property without adequate compensation," and rejected the argument that a foreign sovereign's refusal to provide compensation constituted a taking pursuant to international law. *Id.* at 251 – 52. The alleged taking of the Painting was committed by a private actor. The National Gallery's refusal to compensate Appellants for that taking after the fact does not provide a basis for jurisdiction over a foreign sovereign and its instrumentality. We therefore affirm the district court's decision to dismiss for lack of subject matter jurisdiction.

At oral argument Appellants' counsel stated that the only theory as to why The American Friends of The National Gallery, London, Inc. (the "American Friends") is appropriately joined as a defendant is that the American Friends is an "alter-ego" of the National Gallery. Oral Arg. R. at 15:08. Counsel also conceded that the American Friends "didn't do anything to harm our client." *Id.* at 15:46. An alter-ego claim requires that the plaintiff demonstrate that a principal's control over its alter ego "was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Cortland Street Recovery Corp. v. Bonderman*, 96 NE.3d 191, 203 (2018) (internal quotation marks omitted). As acknowledged by counsel, there is not even the allegation that The American Friends has been used to wrong Appellants. On this basis, therefore, we affirm the dismissal of the claims against it.

We have considered all Appellants' arguments and conclude that they are without merit.

Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court